FILED
United States Court of Appeals
Tenth Circuit

August 3, 2011

Elisabeth A. Shumaker
Clerk of Court

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARK GILBERT RIMBERT, individually and
as Personal Representative of the Estates of
Gilbert John Rimbert and Olivia Acosta
Rimbert, deceased,

      Plaintiff - Appellant,

    v.

ELI LILLY AND COMPANY,

      Defendant - Appellee.

No. 09-2307

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. NO. 1:06-CV-00874-JCH-LFG)**

---

Arnold Anderson Vickery, Vickery, Waldner & Mallia, LLP, Houston, TX (Earl
Landers Vickery, Austin, TX, with him on the briefs), for Plaintiff-Appellant.

Andrew See, Shook, Hardy & Bacon, LLP, Kansas City, MO (Christopher P.
Gramling and Julia C. Walker, Shook, Hardy & Bacon, LLP, Kansas City, MO;
Thomas A. Outler, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque,
NM, with him on the brief), for Defendant-Appellee.

---

Before **MURPHY**, **McKAY**, and **O'BRIEN**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. Introduction

Shortly after Mark Rimbert's father began taking Prozac, he killed his wife and himself. Rimbert brought a wrongful death action against Eli Lilly, the manufacturer of Prozac. After discovery, Eli Lilly moved for summary judgment on various grounds and to exclude the testimony of Rimbert's sole expert witness on the question of causation. Those motions were, in all relevant parts, denied by the district judge who was initially assigned the case. The case was thereafter reassigned, and Eli Lilly moved for reconsideration of the prior rulings. The second district judge granted Eli Lilly's motion to exclude Rimbert's expert witness. Rimbert immediately moved for a new scheduling order allowing him time to name a new expert, which the district court denied. The district court then entered summary judgment for Eli Lilly, concluding that, without the expert's testimony, Rimbert could not put forth any evidence Prozac caused Rimbert's father to commit the murder-suicide.

Rimbert appeals the order excluding the testimony of his expert witness. He also appeals the order denying additional time to name a new expert and the resulting entry of summary judgment for Eli Lilly. Exercising jurisdiction under 28 U.S.C. § 1291, this court **AFFIRMS** the order excluding the testimony, but **REVERSES** the order denying additional time and corresponding entry of summary judgment. The matter is **REMANDED** to the district court for additional proceedings consistent with this opinion.

## II. Background

Rimbert's father was diagnosed with moderate depression and prescribed Prozac. The initial dose was then increased, and shortly thereafter his father committed the murder-suicide. Rimbert brought this wrongful death suit against Eli Lilly, the maker of Prozac, alleging the use of Prozac caused Rimbert's father to take his own and his wife's lives.

After discovery, Eli Lilly filed three dispositive motions: (1) a motion for summary judgment based on federal preemption, (2) a motion for summary judgment on all Rimbert's claims based on evidentiary sufficiency, and (3) a motion to exclude the testimony of Rimbert's sole expert witness under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). After reading the motions, the first district judge to whom the case was assigned made certain disclosures of a personal nature to the parties. He informed the parties he did not believe the circumstances required him to recuse himself from the matter, but offered to have the case reassigned if any party was uncomfortable with his participation. Neither party requested reassignment.

The judge then ruled on Eli Lilly's motions. First, he granted in part and denied in part Eli Lilly's summary judgment motion concerning evidentiary sufficiency, allowing the majority of Rimbert's claims to proceed. Second, he denied Eli Lilly's *Daubert* motion. Finally, he denied Eli Lilly's motion for summary judgment based on federal preemption. The last of these orders was

issued on October 2, 2008. That same day, a pretrial conference was held and the trial date was moved from October 20, 2008, to December 1, 2008, by agreement of the court and the parties.

On October 8, 2008, the district judge made a second disclosure of a personal nature involving a circumstance that had arisen, which, although new, related to the circumstances described in the prior disclosure. Again, the judge indicated he believed he was not required to recuse himself, but offered to have the case reassigned if either party so requested. This time, Eli Lilly requested reassignment and the case was reassigned on October 9, 2008. The same day the case was reassigned, the new district judge vacated the remaining schedule, including the dates for pretrial conferences, pretrial order, jury selection, and trial.

On November 9, 2008, Eli Lilly moved to renew its previous motions or, in the alternative, to certify the orders for interlocutory appeal. On July 21, 2009, the second judge granted Eli Lilly's motion to reconsider the *Daubert* ruling, reversed the first judge's decision, and excluded from trial the testimony of Rimbert's only causation expert. The second judge did not hold another *Daubert* hearing, but rather relied on the same evidence, including the transcript of the initial *Daubert* hearing, as was considered in the first ruling. On July 24, 2009, Rimbert filed a motion for a new scheduling order, in which he requested a new deadline to designate a substitute expert witness. Rimbert suggested a period of

sixty days be allowed. Eli Lilly opposed the motion and urged the district court to enter summary judgment in its favor, as the parties acknowledged without an expert witness Rimbert could not establish causation. The district court denied Rimbert's motion, concluding Rimbert had not shown good cause for a modification of the scheduling order under Fed. R. Civ. P. 16(b)(4), and consequently entered summary judgment for Eli Lilly. This appeal followed.

## III. Discussion

### 1. Reconsideration of the *Daubert* Ruling

Rimbert first challenges the grant of Eli Lilly's motion to reconsider the initial judge's *Daubert* ruling. Rimbert argues that the doctrine of law of the case should apply to constrain a successive district judge's ability to revisit discretionary, interlocutory decisions made by prior judges.

"The law of the case 'doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *United States v. Monsisvais*, 946 F.2d 114, 115 (10th Cir. 1991) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)). This doctrine is designed to promote finality and prevent re-litigation of previously decided issues, but does not serve to limit a court's power. *Wilson v. Meeks*, 98 F.3d 1247, 1250 (10th Cir. 1996). When law of the case doctrine applies, three circumstances generally warrant departure from the prior ruling: (1) new and

different evidence; (2) intervening controlling authority; or (3) a clearly erroneous prior decision which would work a manifest injustice. *Id.*

This court, however, has declined to apply these limitations to rulings revisited prior to entry of a final judgment, concluding that "district courts generally remain free to reconsider their earlier interlocutory orders." *Been v. O.K. Indus.*, 495 F.3d 1217, 1225 (10th Cir. 2007); *see Elephant Butte Irrigation Dist. v. U.S. Dep't of Interior*, 538 F.3d 1299, 1306 (10th Cir. 2008) ("[E]very order short of a final decree is subject to reopening at the discretion of the district judge." (quotation omitted)); Fed. R. Civ. P. 54(b) ("[A]ny order . . ., however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."). This principle remains true even when a case is reassigned from one judge to another in the same court: "[T]he [law of the case] doctrine does not bind a judge to following rulings in the same case by another judge of coordinate jurisdiction as long as prejudice does not ensue to the party seeking the benefit of the doctrine." *United States v. Johnson*, 12 F.3d 1540, 1544 (10th Cir. 1993). The relevant prejudice is limited to lack of sufficient notice that one judge is revisiting the decision of a prior judge and the opportunity to be heard with respect to the new ruling. *Id.*

Rimbert urges the adoption of a position suggested by the Seventh Circuit, under which law of the case principles would constrain a district judge's power to revisit a prior judge's interlocutory ruling when that ruling is discretionary. *See Williams v. Comm'r of Internal Revenue*, 1 F.3d at 502, 503 (7th Cir. 1993). Rimbert argues discretionary decisions should be treated differently because, while two judges may come to different conclusions, if the decision is reviewable only for abuse of discretion, neither may have committed reversible error. *See id.* Revisiting the initial decision in those circumstances, he contends, allows an unfair second bite of the apple with potentially no recourse on appeal.

Rimbert's argument is foreclosed by this court's precedent. In *Wilson v. Merrill Dow Pharmaceuticals, Inc.*, this court considered the ruling of a district judge in precisely these circumstances. 160 F.3d 625, 628 (10th Cir. 1998). There, the initially assigned judge twice denied the defendant's motion for summary judgment based on an argument that the testimony of the plaintiff's expert was not admissible under *Daubert*. *Id.* at 627. When the case was reassigned, the second judge entertained a motion to reconsider the previous ruling and granted the summary judgment motion on the *Daubert* issue. *Id.* The plaintiff argued on appeal that law of the case doctrine should apply to constrain the second judge's reconsideration of the earlier *Daubert* ruling, but this court rejected that argument, instead reviewing that ruling for abuse of discretion. *Id.*

at 628-29.  Accordingly, Rimbert's argument that law of the case should apply in these circumstances has already been considered and rejected by this court.

Rimbert argues *Wilson* is distinguishable because the second judge there granted reconsideration after being persuaded the prior decision was incorrect based on "intervening authority."  Under law of the case doctrine, a newly decided opinion is grounds for departure from a previous ruling only when that precedent is controlling.  *Wilson*, 98 F.3d at 1250.  In *Wilson*, as the newly decided opinion was out-of-circuit, it was merely persuasive.  *Wilson*, 160 F.3d at 628.  Thus, Rimbert is incorrect in his assertion that *Wilson* involved an exception to the law of the case doctrine.  In any event, *Wilson* ruled law of the case doctrine was inapplicable to reconsideration of interlocutory orders in the district court without regard to the basis for reconsideration.  *Id.*  This court's decision in *Been* reaffirms that law of the case doctrine has no bearing on the revisiting of interlocutory orders, even when a case has been reassigned from one judge to another.  495 F.3d at 1225.

Other cases cited by Rimbert are inapposite.  In *Johnson v. Champion*, this court declined to decide whether law of the case applied because one of the exceptions to the doctrine was clearly applicable.  288 F.3d 1215, 1225-26 (10th Cir. 2002).  Moreover, at issue in *Johnson* was the application of the law of the case doctrine to bind the appeals court by a prior district court decision which could have been but was not appealed.  *Id.*; *see Martinez v. Roscoe*, 100 F.3d 121,

123 (10th Cir. 1996) (applying law of the case in those circumstances). Here, the district court's first order never became a final, appealable order which would invoke this type of law of the case doctrine. In *Servants of Paraclete v. Does*, this court merely announced the principles under which a motion for reconsideration after a final judgment should be granted, a wholly separate inquiry from the standard under which we review reconsideration of an interim order. *See* 204 F.3d 1005, 1012 (10th Cir. 2000). Again, here, the initial judge's *Daubert* ruling was an interim order. Because the initial ruling was never made final, the second judge's reconsideration of that ruling is reviewed for abuse of discretion. *Wilson*, 160 F.3d at 627.

Notably, Rimbert makes no argument on appeal that the substance of the second judge's *Daubert* ruling, i.e., excluding the testimony of Rimbert's expert, constitutes an abuse of discretion. Rimbert also does not argue that he was denied notice or the opportunity to be heard such that the second judge's reconsideration of the prior ruling prejudiced his procedural rights. *See Johnson*, 12 F.3d at 1544. His arguments are limited to his contention that the second judge's ruling was an abuse of discretion because none of the three exceptions to law of the case doctrine apply, including his contention that there was no intervening authority, new facts, or manifest injustice resulting from the previous ruling. Because this court concludes that the doctrine has no applicability here, those arguments fail to demonstrate an abuse of discretion. Moreover, it was not

"manifestly unreasonable" for the district court to, upon being assigned a new case, independently assure itself of the expert's reliability and to fulfill its gatekeeper function. *Wilson*, 160 F.3d at 630.

## 2. Estoppel

Rimbert contends, in the alternative, that Eli Lilly waived any objection to the initial judge's ruling on the motions, and thus was estopped from seeking reconsideration of those rulings. Because Eli Lilly did not seek recusal after the first disclosure, Rimbert asserts Eli Lilly should have been estopped from any attempt to have the initial judge's rulings reversed after the supplemental disclosure. *See Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 868 (1988) (explaining a party must promptly seek recusal when circumstances warranting recusal become known); *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (holding judicial estoppel applies when party took a prior inconsistent position, persuaded the court to accept that position, and then would obtain an unfair advantage or impose an unfair detriment to the other party by switching courses midstream).

Rimbert's arguments are unavailing because, in contrast to his characterization, it is clear from the record the second disclosure was materially different from the first. As evidenced by the judge's decision to issue a supplemental disclosure, new events led to that disclosure. Unlike the initially disclosed circumstances, the new events involved the drug at issue in this case

and an episode much more akin to the situation in this case. That the judge

provided the renewed opportunity for either party to request reassignment was

implicit recognition that the new circumstances were materially different.

Accordingly, Eli Lilly's consent to the judge's participation in the case in

connection with the first disclosure did not waive its rights to seek recusal after

the second disclosure. *See Welch v. Sirmons*, 451 F.3d 675, 701 (10th Cir. 2006)

(explaining that a litigant waived judicial disqualification after trial judge's "full

disclosure" of any possible bases for disqualification), *overruled on other

grounds by Wilson v. Workman*, 577 F.3d 1284 (10th Cir. 2009) (en banc).

Additionally, without deciding as a threshold matter if judicial estoppel is

properly invoked in these circumstances, the second disclosure precludes Rimbert

from establishing estoppel in any event because it represents a changed

circumstance and Eli Lilly's earlier consent is therefore not a clearly inconsistent

position with its later request for reassignment. *See Johnson*, 405 F.3d at 1069

(explaining for judicial estoppel to apply, the later position must be clearly

inconsistent with the earlier position). Eli Lilly was accordingly free to request

reconsideration of the initial judge's rulings.[1]

---

[1]Notably, although Eli Lilly argued below the prior rulings should be reconsidered because of the appearance of bias based on the judge's second disclosure, the second judge explicitly rejected that basis for reconsideration. Accordingly, there is no need to decide whether Eli Lilly should have been estopped from seeking reconsideration of the rulings based on the appearance of bias, as opposed to seeking reconsideration based on its view that the prior

(continued...)

-11-

### 3. Motion for a New Scheduling Order

Rimbert finally contends that even if the district court properly exercised its discretion to revisit the previous judge's *Daubert* ruling, it erred in thereafter denying Rimbert's motion for a new scheduling order to allow time to name a new expert and, as a result, entering summary judgment for Eli Lilly. We review a court's refusal to enter a new scheduling order for abuse of discretion. *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 604 (10th Cir. 1997). While the district court is afforded broad discretion in managing the pretrial schedule, this court has recognized that a scheduling order can have an outcome-determinative effect on the case and "total inflexibility is undesirable." *Id.* (quotation omitted); *see 103 Investors I, L.P. v. Square D Co.*, 372 F.3d 1213, 1215-16 (10th Cir. 2004). A scheduling order which results in the exclusion of evidence is, moreover, "a drastic sanction." *Summers*, 132 F.3d at 604.

In reviewing the denial of a party's motion for a new scheduling order to name a previously undisclosed witness, this court considers four factors to determine whether the district court abused its discretion:

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in court, and (4) bad faith or willfulness in failing to comply with the court's order.

---

[1](...continued)
rulings were incorrect.

*Id.* at 604 (quotation omitted). In *Summers*, this court held a district court abused its discretion in refusing to grant a continuance for a plaintiff to secure a new expert after the original expert's testimony was ruled inadmissible under *Daubert*. *Id.* There, the first two factors weighed in favor of modifying the scheduling order because the "[d]efendant could hardly have been surprised that plaintiffs would attempt to procure alternative expert testimony in the event the court granted defendant's [*Daubert*] motion" and the defendant already had prepared its own expert testimony. *Id.* at 605. The defendant was also able to cure any prejudice through review of the new expert's reports and depositions. *Id.* The court found the third factor likewise counseled in favor of allowing the new expert, because the motion for a new scheduling order was filed eighty days prior to trial and the plaintiffs had acted "promptly to find new experts." *Id.* Finally, there was no bad faith on the part of the plaintiffs, who acted diligently and whose original experts were doctors plaintiffs had been referred to by the defendant, thereby indicating the defendant may have had a hand in the plaintiffs' predicament. *Id.*

Here, the single most important fact about the posture of Rimbert's motion for a new scheduling order is that, at the time it was made, there was no longer any impending trial date or pretrial schedule remaining. That schedule had been completely vacated by the second district judge who, immediately upon being

-13-

assigned a complex case less than two months before the scheduled trial date, understandably required additional time to familiarize herself with the case. As a consequence, there was no scheduling order or deadlines to disrupt when Rimbert moved for a new scheduling order.

Despite this critical fact, the district court, in somehow attempting to "ensure that [Rimbert was] not unfairly prejudiced by the Court's vacating of the prior trial Court's [Daubert] ruling," inexplicably "analyzed [Rimbert's] motion [for a new scheduling order] as if it had ruled to exclude [the expert's] testimony on the same date that the initial trial Court gave its ruling." *Rimbert v. Eli Lilly & Co.*, No. 06-0874, at 3-4 (D.N.M. July 21, 2009) (order granting motion to reconsider and *Daubert* motion). As a result, the district court concluded: "It is only because it concludes that [Rimbert] would not have been eligible to add a new expert on September 29, 2008 that the Court now denies [Rimbert's] motion." *Id.* at 4. On September 29, 2008, the date Eli Lilly's *Daubert* motion was initially denied, however, there was an imminent trial date and a full pretrial schedule. In contrast, at the time Rimbert filed his motion, the district court had long ago vacated the scheduling order and the case was thus in a vastly different posture. Considering Rimbert's motion as if it had been made ten months earlier blinded the district court to the most salient fact extant at the time of its *Daubert* ruling, i.e., no scheduling order or deadlines remained.

-14-

The lack of a trial schedule likewise bears on the question of whether Eli Lilly would have been prejudiced by a new scheduling order, the first of the *Summers* factors. Like the defendant in *Summers*, Eli Lilly would not be prejudiced by a new scheduling order in the sense of being unable to mount a defense against the new expert's testimony. *Compare Summers*, 132 F.3d at 605 (concluding party opposing extension of time would not be prejudiced because there was sufficient time to adequately prepare a defense against the newly named expert's testimony), *with Smith v. Ford Motor Co.*, 626 F.2d 784, 798-99 (10th Cir. 1980) (determining party was prejudiced by witness testifying at trial who was not timely disclosed because counsel was only allowed eleven minutes to prepare cross-examination). Since no trial date was set at the time Rimbert requested a new scheduling order, there is no reason the district court could not provide ample opportunity for Eli Lilly to test the opinions of the new expert witness, review the witness's reports, depose the new witness, and adequately defend against that expert at trial. *See Davey v. Lockheed Martin Corp.*, 301 F.3d 1204, 1210-11 (10th Cir. 2002) (holding, under the *Summers* rubric, a district court abused its discretion in refusing to amend a pretrial order to include a previously unasserted affirmative defense, noting, "the timing of the motion in relation to the commencement of trial is an important element in analyzing whether the amendment would cause prejudice").

The district court considered the additional expense Eli Lilly would incur to test the expert opinions of a newly named witness as establishing prejudice to Eli Lilly. Reliance on such expenses, however, was misplaced. While repeated attempts to secure the admission of expert testimony is a concern, *see United States v. Nacchio*, 555 F.3d 1234, 1253 (10th Cir. 2009) (en banc), extra expense alone is not the type of prejudice contemplated under *Summers*. The type of prejudice that rises to the level of warranting the exclusion of a witness's testimony under *Summers* is the inability of the opposing party to fully litigate the case and defend against the new testimony, a concern that is not presented in this case. Moreover, in light of Eli Lilly's own successful attempt to renew its previously failed *Daubert* motion, with attendant expense and delay, Eli Lilly's claim of unfairness stemming from extra expense of discovery pertaining to a second expert rings hollow. *Cf. 103 Investors I, L.P.*, 372 F.3d at 1216 (reversing denial of new scheduling order and noting multiple previous extension requests of party opposing new schedule).

As to the final factor under *Summers*, the record reflects Rimbert acted diligently and even Eli Lilly concedes there was no indicia of bad faith. Although the district court suggested Rimbert failed to act diligently because he had not actually identified a new expert at the time he moved for a new scheduling order, *Summers* draws no bright line rule to that effect. Rimbert requested a modest sixty-day period to name a new expert and represented to the court there were

experts with relevant experience he could secure for this purpose who could be prepared in a short time frame. Moreover, he moved for a new scheduling order within days of the order granting Eli Lilly's *Daubert* motion and before any action was taken on its motion for summary judgment. In contrast, over three and a half months, almost twice the time requested by Rimbert, passed before the court ruled on the motion for a new scheduling order.

While in *Summers* the defendant's hand in directing plaintiffs to their original experts was a factor in the calculus and no such involvement by Eli Lilly occurred here, other factors unique to this case similarly demonstrate Rimbert was not at fault for the situation he faced. Eli Lilly makes much of the fact that Rimbert was on notice of its *Daubert* challenge to the expert's testimony and alleged flaws in the expert's methodology, but Rimbert was in the odd position of having prevailed on the *Daubert* issue in the first instance. Thus, whatever flaws in the expert's testimony Rimbert can see now in hindsight, it cannot be said Rimbert's reliance on his expert was so unreasonable as to warrant a finding of bad faith when his expert was in fact deemed reliable by the initial district judge. Second, although Rimbert did not seek to name a new expert prior to the first *Daubert* ruling, several subsequent events occurred that would have been impossible to predict. Rimbert could not have guessed that, after the initial judge's rulings on the dispositive motions, the case would thereafter be

reassigned. It was equally impossible for Rimbert to predict that the second judge would revisit the *Daubert* issue.

In the normal course of events, district courts are well within permissible discretion to deny the opportunity to name a new expert after discovery has closed and a party receives an unfavorable *Daubert* ruling. Here, however, the district court was not faced with a case that had proceeded normally, and the unique circumstances presented called for flexibility in the discovery schedule. In light of the procedural oddities of the case, including an initial favorable *Daubert* ruling, and the district court's unorthodox consideration of the motion for a new scheduling order as if it had been made at a prior date when the case was in a vastly different posture, this court is left with the "definite and firm conviction" that disallowing Rimbert's request for additional time to name a substitute expert was an abuse of discretion. *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1164 (10th Cir. 2000).

### 4. Alternate Grounds for Summary Judgment

Eli Lilly raises three alternative grounds for affirming the district court's grant of summary judgment. First, it asserts this court may affirm on the alternate basis that Rimbert's failure-to-warn claims are preempted by FDA mandated labeling. Second, it argues summary judgment can be affirmed on the basis that Rimbert's claims are barred by New Mexico's learned intermediary doctrine. And finally, it claims entitlement to summary judgment on the alternate basis that

Rimbert has put forth insufficient evidence of proximate cause. Although this court may affirm on any ground apparent in the record, affirming on legal grounds not considered by the trial court is disfavored. *Stillman v. Teachers Ins. & Annuity Ass'n College Ret. Equities Fund*, 343 F.3d 1311, 1323 (10th Cir. 2003); *Yvonne L. v. N.M. Dep't of Human Servs.*, 959 F.2d 883, 893 (10th Cir. 1992); *Wilson v. St. Louis-San Francisco Ry. Co.*, 673 F.2d 1152, 1155 (10th Cir. 1982). Here, the grounds advanced by Eli Lilly were considered in the initial district judge's rulings. The second district judge, however, expressly declined to consider those issues on reconsideration in light of its *Daubert* ruling. Moreover, the initial judge's rulings would not have triggered a right to immediate appellate review, as they were interim orders. *See* 28 U.S.C. § 1291. In these circumstances, it is best to allow the district court to consider the renewed motions in the first instance as it sees appropriate on remand.

## IV. Conclusion

For the foregoing reasons, the district court's order granting Eli Lilly's renewed *Daubert* motion is **AFFIRMED**. The order denying Rimbert's motion for a new scheduling order and entering summary judgment for Eli Lilly is **REVERSED** and the matter is **REMANDED** to the district court for further proceedings consistent with this opinion.