**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 19, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

EMPLOYERS' MUTUAL
CASUALTY COMPANY, an Iowa
corporation,

　　　　Plaintiff-Appellee,

v.

BARTILE ROOFS, INC., a Utah
corporation, and JOHN DOES 1-50,

　　　　Defendant-Appellant.

No. 11-8026
(D.C. No. 1:07-CV-00182-WFD)
(D. Wyo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **MURPHY**, and **HOLMES**, Circuit Judges.

---

Employers Mutual Casualty Company ("EMC") brought an action in the

District of Wyoming, seeking a declaratory judgment that it had no duty under its

policies with Bartile Roofs, Inc. ("Bartile") to defend Bartile against a Third

Amended Cross-Complaint filed in California state court by Jacobsen

---

[*]　　　After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Construction Company ("Jacobsen"). The district court granted declaratory relief to EMC. We affirmed. *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153 (10th Cir. 2010) (*Bartile I*).

While *Bartile I* was pending, EMC sought a further declaratory judgment pursuant to 28 U.S.C. § 2202 that it also owed no duty to defend Bartile against Jacobsen's Fourth Amended Cross-Complaint ("Fourth ACC"), filed in the same California state court action. The district court determined that the allegations in the Fourth ACC arose from "Bartile's failure to fulfill its contractual obligation to perform skillful and defect-free work" and that such allegations did not require EMC to defend Bartile. Aplt. App., Vol. II at 536. Bartile now appeals from the district court's order granting EMC further declaratory relief.

The law announced in our decision in *Bartile I* precludes the relitigation of certain issues raised by Bartile in this appeal. The district court properly granted summary judgment to EMC on these and the other issues that Bartile now raises. Accordingly, we affirm the award of summary judgment to EMC.

## BACKGROUND

Bartile contends that the Third and Fourth ACC differ significantly in both factual and legal import. Some discussion of the background of these complaints and the history of this case is therefore in order.

**1.  The Origin of Jacobsen's Cross-Complaints**

This case arises out of the construction of the "Four Seasons Resort Jackson Hole" in Jackson, Wyoming (the "Project").  FS Jackson Hole Development Company, LLC ("FSJH") was the Project's owner and developer.  Jacobsen was the Project's original contractor and was responsible for hiring subcontractors ("subs") to perform work on the Project.  One of these subs was Bartile.

Sometime prior to March 2004, disputes arose between FSJH and Jacobsen.  As a result, FSJH fired Jacobsen from the Project.  In March 2004, Jacobsen sued FSJH in California state court, asserting claims against FSJH arising from construction of the Project.  FSJH cross-complained against Jacobsen, seeking damages for alleged construction defects.  Jacobsen in turn filed a series of cross-complaints against its subs and their insurers.

On September 22, 2006, Jacobsen filed its Third ACC in the California action.  In the Third ACC, Jacobsen sought to offset FSJH's claims against it by obtaining indemnity and contribution from its subs and various other entities.  Bartile was not expressly named in the Third ACC, but was implicitly included as one of Jacobsen's "ROES 1 through 50" who "provided services, labor and/or materials for the Project pursuant to a subcontract agreement with Jacobsen." *Id.* Vol. I at 14.

**2. EMC's Declaratory Judgment Action**

EMC had issued Commercial General Liability Coverage ("CGL") policies to Bartile naming Bartile as the insured. Bartile tendered its request for defense and for indemnity under these policies to EMC. EMC initially defended Bartile, but then filed this suit in the District of Wyoming seeking a declaration that Jacobsen's claims against Bartile were not covered under the policies.

The district court granted summary judgment to EMC, finding that EMC had no duty to defend Bartile against the Third ACC. It also denied Bartile's motion to dismiss or to transfer venue to the District of Utah. Bartile appealed, raising issues in this court concerning personal jurisdiction, proper venue, and the appropriate choice of law. In the course of resolving these issues, we reached certain conclusions about the scope of coverage under the CGL policies that are relevant to the current appeal.

**3. The Prior Appeal (*Bartile I*)**

In *Bartile I*, among other issues, this court considered Bartile's objections to the district court's choice-of-law determinations. The district court had applied Wyoming law to interpret the CGL policies because it concluded there was no actual conflict between Wyoming and Utah law. On appeal, Bartile argued that the district court should have applied Utah law because Wyoming and Utah law conflicted concerning (1) the admissibility of extrinsic evidence in determining

-4-

the scope of an insurer's duty to defend, and (2) the definition of an "accident" under the CGL policies.

Addressing these challenges, we held that the differences in Wyoming and Utah law were not material and that they would not produce different outcomes. *Bartile I*, 618 F.3d at 1171.  Both Utah and Wyoming law would bar the admission of extrinsic evidence to determine the scope of EMC's duty to defend under the policies.  *Id.* at 1171-73.  More importantly, there was also no significant difference in the state law definitions of "accident," a key definition pertinent to the current appeal.  *Id.* at 1173-75.

Under the CGL policies--the same policies at issue in this case--EMC "assume[d] the duty to defend against any suits seeking damages for property damage caused by an 'occurrence' within the coverage territory."  *Id.* at 1173 (quoting policies).  The CGL policies defined an "occurrence" as an "'accident, including continuous or repeated exposure to substantially the same general harmful conditions.'"  *Id.* (quoting policies).  The policies did not define "accident," so the district court had to look to state law for the definition of this term.  Wyoming and Utah law defined "accident" differently:

-5-

| Wyoming | Utah |
| --- | --- |
| [A] fortuitous *circumstance, event, or happening*, an *event* happening without any human agency, or if happening wholly or partly through human agency, an *event* which under the circumstances is unusual or unexpected by the person to whom it happens; an unusual, fortuitous, unexpected, unforeseen or unlooked for *event, happening or occurrence*; . . . chance or contingency; fortune; mishap; some sudden and unexpected *event* taking place without expectation, upon the instant, rather than something which continues, progresses or develops . . . . <br><br> *Bartile I*, 618 F.3d at 1173 (alterations in original) (internal quotation marks omitted). | [T]he word [accident] is descriptive of means which produce *effects* which are not their natural and probable consequences. . . . An *effect* which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. <br><br> *Bartile I*, 618 F.3d at 1173-74 (alterations in original) (internal quotation marks omitted). |

We concluded that "Wyoming law focuses on the unexpectedness of the *event*, while Utah law focuses on the unexpectedness of the *result or injury*." *Id.* at 1174. But given the nature of the underlying cross-claims against Bartile, this was a distinction without a difference.

> [E]ven though the underlying complaints plead claims under several labels, the claims all arise out of Bartile's allegedly negligent roofing work and its alleged breach of its contractual duties to perform roofing work, indemnify the general contractor, and obtain insurance for the general contractor. Under [both] Wyoming and Utah law, the natural results of an insured's negligent and unworkmanlike

construction do not constitute an occurrence triggering coverage under a CGL policy.

*Id.* (internal quotation marks and alterations omitted).

Thus, we concluded, "the district court properly found that Wyoming and Utah would apply the same law to this action regarding the admissibility of extrinsic evidence and the definition of the term 'accident.' The district court also correctly applied the law of the forum [i.e., Wyoming]." *Id.* at 1175. We therefore affirmed summary judgment for EMC.

### 4. The Fourth Amended Cross-Complaint

In October 2009, prior to our decision in *Bartile I*, Jacobsen filed its Fourth ACC in California state court. In contrast with the Third ACC, Bartile is the only defendant expressly named in the Fourth ACC. This is because "[t]he Underlying Action was settled by all parties except for Jacobsen and Bartile." Aplee Br. at 5; *see also* Aplt. App., Vol. II at 208-23 (order approving settlement).[1]

The Fourth ACC asserts claims against Bartile for equitable indemnity, contribution, breach of contract, express indemnity, and negligence. Only the negligence claim is entirely new. The Fourth ACC also includes new, more detailed factual allegations that describe the basis for Jacobsen's claims against Bartile. *See* Aplt. App., Vol. I at 63-66.

---

[1]     Notwithstanding the settlement, the Fourth ACC retains language throughout concerning certain ROE defendants. Their presence in the suit does not appear to affect the issues on appeal.

-7-

As Bartile notes, the Fourth ACC also contains a new reference to an "accident." This comes in its description of FSJH's prior complaint *against Jacobsen*, which alleged that "[a]s a result of Jacobsen's failure to properly manage the performance of the work by both its subcontractors and its own employees, much of that work was negligently performed so as to accident[ally] cause physical damage to, and loss of use of other parts of the work at the project." *Id.* at 62.

### 5. District Court Disposition

Bartile once again sought defense and indemnity from EMC for the claims asserted against it in the Fourth ACC. EMC responded by filing its "Petition for Further Relief" in district court, seeking a declaration that it owed no duty to defend or to indemnify Bartile against the claims asserted in the Fourth ACC. The district court granted EMC summary judgment on its petition. This appeal followed.

## ANALYSIS

### 1. District Court's Reasoning

The district court began its analysis by noting that the Fourth ACC was "nearly identical" to the Third ACC. *Id.*, Vol. II at 528. Bartile, however, relied on two additional features of the Fourth ACC that it claimed triggered EMC's duty to defend. The first was the new cause of action grounded in negligence. The second was an allegation that Bartile's defective workmanship caused water

-8-

intrusion resulting in consequential property damage to other portions of the Project.

The district court stated, as we had previously stated in *Bartile I*, that the policies define an occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 533 (internal quotation marks omitted). It then turned to Wyoming law to define the term "accident," relying on essentially the same definition we had previously cited in *Bartile I*, 618 F.3d at 1173. The district court then moved away from our prior analysis, however, turning instead to the distinction between tort-based and contract-based causes of action.

The district court reasoned that "[a] breach of contract is not an 'accident.'" Aplt. App., Vol. II at 534. This is because "[t]he risk that a party will breach the agreement and become [liable] to the other party is inherent in every contract." *Id.* Thus, a breach is not "unusual and unexpected" to the non-breaching party and is not an "accident" under Wyoming law. *Id.* at 534-35 (internal quotation marks omitted). Notwithstanding Bartile's arguments to the contrary, "the allegations in the [Fourth ACC] sound in contract and not in tort." *Id.* at 535. Moreover, "couching a claim for breach of contract in terms of negligence does not trigger a duty to defend." *Id.* The district court concluded that the negligence claim therefore did not create a duty to defend.

Turning to the allegations of water damage, the district court discerned a meaningful split between Utah and Wyoming law concerning the meaning of the term "accident":

> In Wyoming, an accident is an unusual and unexpected event. By contrast, in Utah, the word accident is descriptive of means which produce *effects* which are not their natural and probable consequences. Thus, . . . Wyoming law focuses on the unexpectedness of the *event*, while Utah law focuses on the unexpectedness of the *result* or *injury*.

*Id.* at 535-36 (citations and internal quotation marks omitted).

The district court then determined that Wyoming law, rather than Utah law, applied. Under Wyoming law, the district court concluded, the relevant "event" was "Bartile's failure to perform as required by its contract." *Id.* This event was "not so unusual or unexpected as to be considered an accident as defined by Wyoming law." *Id.*

## 2. Summary Judgment Standard of Review

"We review the district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party." *McCarty v. Gilchrist*, 646 F.3d 1281, 1284 (10th Cir. 2011). "Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." *Id.* at 1284-85. In conducting our review, "we may affirm on any basis supported by the record, even though not

-10-

relied on by the district court." *Id.* at 1285 (internal quotation marks and alteration omitted).

### 3. EMC's Preclusion Argument

EMC contends that our decision in *Bartile I* explicitly or implicitly addressed all of the issues raised by Bartile in the present appeal, and therefore that decision mandates a ruling in favor of EMC under the law of the case doctrine. "The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) (internal quotation marks omitted).[2] A court must have actually

---

[2]      An interesting issue not addressed by the parties is whether this declaratory judgment proceeding should even be treated as the "same case" as *Bartile I* for law of the case purposes. The current proceeding began after a final judgment and appeal, when EMC requested "further relief" under 28 U.S.C. § 2202. Section 2202 allows a party to seek "[f]urther necessary or proper relief *based on a declaratory judgment or decree*." *Id.* (emphasis added). The previous declaratory judgment in this case, however, declared only that there was no coverage for the Third ACC. In this case, EMC essentially sought a *new* declaratory judgment that there was also no coverage for the Fourth ACC. Did this make this proceeding a "new case" for law of the case purposes, rather than a subsequent stage of an existing case? If so, either the "prior panel rule" or collateral estoppel (issue preclusion), rather than law of the case, would seem to be the applicable preclusion doctrine. We need not worry further about this procedural difficulty, however, because in either event, the result achieved by applying preclusion principles would be the same. *See, e.g.*, *Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010) ("[W]hen a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on . . . subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue." (internal quotation marks omitted)).

decided an issue, "either explicitly or by necessary implication," to create law of the case. *Copart, Inc. v. Admin. Review Bd.,* 495 F.3d 1197, 1201 (10th Cir. 2007) (internal quotation marks omitted); *see also Hale v. Gibson*, 227 F.3d 1298, 1329 n.13 (10th Cir. 2000).

Obviously, we did not determine in *Bartile I* that EMC had no duty to defend or indemnify Bartile against the Fourth ACC. That issue was not present in *Bartile I*, either expressly or by implication. What we did determine was the meaning of the term "accident" under the policies and the relevant state law. That prior determination has two consequences pertinent to this appeal.

First, to the extent that Bartile attempts to circumvent our prior legal conclusion concerning what constitutes an "accident" under the CGL policies, the law of the case doctrine bars the attempt. Second, to the extent that the Fourth ACC, like the Third ACC, does not seek recovery for an "accident" because it asserts only causes of action based on the natural results of Bartile's negligent and unworkmanlike construction, any difference in wording between the two complaints is immaterial, and EMC is entitled to relief for the same reasons stated in *Bartile I. Cf. Greene v. Safeway Stores, Inc.*, 210 F.3d 1237, 1242 (10th Cir. 2000) (stating immaterial differences in evidence produced in second trial after remand were insufficient to justify departure from law of the case concerning sufficiency of evidence).

## 4. Bartile's Appellate Arguments

### A. Negligence Claim: Tort vs. Contract

Bartile begins by attacking the applicability of the district court's distinction between coverage for actions sounding in tort and contract. Notwithstanding the district court's attempt to characterize the negligence claim in the Fourth ACC as contractually-based, Bartile reasons, it is actually a tort claim. It follows, Bartile argues, that the district court's reason for concluding that the resulting breach was neither unusual or unexpected--because a breach of contract is always within the realm of possibility whenever two parties contract-- was invalid, as was its further conclusion that the breach of contract involved no "accident."

We need not linger long over this attempted distinction.[3] Coverage here does not depend on whether the claims against Bartile sound in tort or contract. As we explained in *Bartile I*, regardless of the label applied to a claim, "[u]nder [both] Wyoming and Utah law, the natural results of an insured's negligent and unworkmanlike construction do not constitute an occurrence triggering coverage under a CGL policy." *Bartile I*, 618 F.3d at 1174 (internal quotation marks and

---

[3]     Bartile devotes a significant portion of its brief to proving that Wyoming law would hold that conduct constituting both a breach of contract and a tort can trigger a duty to defend. *See* Aplt. Opening Br. at 20-27. But for the reasons we have stated, the tort/contract distinction is essentially irrelevant to the applicable definition of an "accident" discussed in *Bartile I*. Accordingly, we do not discuss further Bartile's argument on this point.

alterations omitted); *see also id.* n.17 (stating difference in Wyoming and Utah law concerning whether CGL policies cover contract claims was irrelevant to choice-of-law issue because real issue was "whether the natural results of an insured's unworkmanlike or negligent construction can constitute an occurrence," a question on which "the law of Wyoming and Utah is in agreement, answering in the negative"). The issue therefore is not whether the Fourth ACC contains a tort claim, but whether the Fourth ACC seeks to hold Bartile liable for something other than the natural results of its own negligent and unworkmanlike construction. Bartile has failed to show this is the case.[4]

## B. Unforeseen and Unexpected Result

Given our statements about the law in *Bartile I*, one might have expected Bartile's appellate briefing in this appeal to focus on whether the consequential water damage to other portions of the Project not under Bartile's control were an *unnatural result* of its negligence. But that is not the argument Bartile makes.

------

[4]    In determining whether the Fourth ACC charges Bartile with an "accident," the district court applied Wyoming law. *See* Aplt. App., Vol. II at 533-36. Bartile does not contest this choice of law. *See, e.g.*, Aplt. Opening Br. at 12. Oddly, however, Bartile mounts an argument, based in part on the application of *Utah* law, concerning the "expected" and "foreseeable" results of an injury. *See id.* at 12-16. This argument is irrelevant to the issues here, given Bartile's concession that Wyoming law applies. We would also note that we previously rejected this identical argument in *Bartile I* itself, 618 F.3d at 1175 n.18. Bartile gives us no reason to revisit an issue already discussed and disposed of in the previous appeal.

Instead, citing Wyoming law which focuses on the "event" triggering coverage, and viewing its own negligence rather than the water damage itself as the relevant "event," Bartile argues that "[t]here is nothing in the [Fourth] ACC, or in any other evidence before the trial court, or in any logical, common sense understanding, to suggest that Bartile foresaw, or expected, or intended, any of the *negligent conduct* alleged against it in the [Fourth] ACC." Aplt. Opening Br. at 14 (emphasis added). To bolster this argument, Bartile contends that "it can safely be assumed that construction subcontractors don't intend to be careless," *id.* at 16, and "reputable roofing subcontractors do not expect to accidentally cause damage," *id.* at 19.

This argument, however, merely represents an attempted "end run" around the definition of "accident" we established in *Bartile I*, which constitutes the law of this case. In *Bartile I* we repeatedly insisted that both Utah and Wyoming would agree that "the *natural results* of an insured's *unworkmanlike or negligent* construction" do *not* "constitute an occurrence (i.e. accident) triggering coverage under a CGL policy." 618 F.3d at 1174 n.17 (emphasis added). Again, Bartile makes no argument that the consequential water damage at issue here was *not* a natural result of Bartile's own unworkmanlike or negligent construction.[5] This

---

[5] In its opening brief, Bartile does occasionally mention the allegations in the Fourth ACC that it "accidentally" caused damage to property other than its own work. *See, e.g.*, Aplt. Opening Br. at 2. But Bartile fails to argue that this result

(continued...)

-15-

being the case, under the very law we repeatedly emphasized in *Bartile I*, Bartile

has not established an "accident" subject to policy coverage.

Simply put, Bartile's argument is devoid of merit because it does not focus

on the proper and applicable "natural results" standard we established in *Bartile I*.

Nor does Bartile advance any argument that the "event" of its unworkmanlike or

negligent construction produced any unnatural or unexpected results.[6]

**CONCLUSION**

The law announced in our decision in *Bartile I* precludes the relitigation of

the issues raised by Bartile in this appeal. The district court properly granted

---

[5](...continued)
was an "unnatural" result of its own negligence. *See id.* ("Bartile breached a duty, imposed by law, of reasonable care, by negligently and "accidentally" *performing defective roofing work*") (emphasis added). In its reply brief, Bartile appears to shift gears, concentrating more on the *accidental results* of its negligence. We decline to consider arguments raised for the first time in reply briefs, however. *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011).

[6]     Nor is there merit in Bartile's assertion that the *potential* that its negligent acts might have been unexpected by someone involved is enough to trigger EMC's duty to defend. Aplt. Opening Br. at 19-20. Absent a showing that the claims against it involved something other than the natural results of its own unworkmanlike or negligent construction, Bartile entirely fails to bring itself within the ambit of potential coverage under the policies, as we squarely held in *Bartile I*.

summary judgment to EMC.  Accordingly, the judgment of the district court is

AFFIRMED.

Entered for the Court


Michael R. Murphy
Circuit Judge