**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 27, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

CHRISTOPHER JOHN WEBB,

    Plaintiff - Appellant,

v.

THE BILLY MADISON SHOW; BILLY
MADISON; DEREK ALLGOOD; 106.9
KHITS; SCRIPPS MEDIA
INCORPORATED,

    Defendants - Appellees.

No. 20-5052
(D.C. No. 4:20-CV-00096-TCK-JFJ)
(N.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **PHILLIPS**, **MURPHY**, and **McHUGH**, Circuit Judges.
_____

Christopher Webb, proceeding pro se, appeals the dismissal of his Amended

Complaint. The Defendants removed the lawsuit to federal court under diversity

jurisdiction, and the district court dismissed on several grounds, including for failure to

state a claim and under Oklahoma's statutes of limitations. Webb challenges the removal

and dismissal and raises previously unraised issues on appeal. Exercising jurisdiction

under 28 U.S.C. § 1332, we affirm the district court.

---

[*] This order and judgment is not binding precedent, except under the doctrines
of law of the case, res judicata, and collateral estoppel. It may be cited, however, for
its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**BACKGROUND**[1]

In 2012, the Billy Madison Show aired a radio episode discussing cremated remains. Webb called the listener's line to share that he still had his father's remains in his truck and was waiting for a time he and his brothers could bury them. Defendant Billy Madison asked to use the cremated remains as a cast member on the show, so Webb agreed to lend them to the show. Webb gave no "release, consent or permission" to open the funeral-home box. R. at 59. Months later, he learned that the cast had desecrated the remains by using them with coffee and in an enema.

In early 2019, so about seven years later, Webb sought return of the remains for burial. On telephoning the show, he was told to e-mail Defendant Derek Allgood. Allgood responded to Webb's e-mail with "Hey buddy what address would you like them sent to." *Id.* at 60. Webb provided an address but never received anything. Then, he tried contacting the Defendants via telephone, Facebook Messenger, and letter, but the Defendants ignored him. Defendants never returned the remains.

The events had "devastating" and "detrimental" effects on Webb and his brothers. *Id.* at 61. He feels it is "horrifying and disgusting what [the] defendants did with [his] father for a few ratings." *Id.* at 61. He sued the Defendants in Oklahoma state court, seeking $75 million for humiliation and pain and suffering, and $25 million in punitive damages.

---

[1] We construe Webb's, a pro se appellant's, complaint liberally, *see Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002), and accept the facts alleged as true, *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016) (citation omitted).

## DISCUSSION

### I. Removal

On appeal, Webb first challenges the removal of his case to federal court without his knowledge or consent, or a chance to oppose. The Defendants argue that removal was proper under diversity of citizenship and that Webb has waived all non-jurisdictional challenges by filing his motion to remand to state court after the thirty-day deadline provided in 28 U.S.C. § 1447(c). Webb filed his motion on non-jurisdictional grounds on April 23, 2020, one day before the court filed its dismissal order and judgment. The district court dismissed Webb's motion as moot.

We agree with the Defendants that the federal district court had diversity jurisdiction. Diversity jurisdiction exists when (1) the amount in controversy exceeds $75,000, and (2) the action "is between . . . citizens of different States." 28 U.S.C. § 1332(a), (a)(1). "[A] person is a citizen of a state if the person is domiciled in that state." *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014) (citation omitted). "And a person acquires domicile in a state when the person resides there and intends to remain there indefinitely." *Id.* (citations omitted). Corporations are citizens of the states in which they are incorporated as well as of states in which they have their principal places of business. 28 U.S.C. § 1332(c)(1). Here, Webb seeks more than $75,000, the amount required to be in controversy. And the diversity-of-citizenship requirement is met. Webb is an Oklahoma citizen; the individual Defendants are Texas citizens; and Scripts Media is a Delaware corporation with an Ohio principal place of business. For purposes of diversity jurisdiction, we disregard the Defendant radio station and show.

3

Under Oklahoma law, they lack capacity to be sued, since neither is a "person, corporation, partnership, or unincorporated association." Okla. Stat. Ann. tit. 12, § 2017(B); *see* Okla. Stat. Ann. tit. 25, § 16 ("The word 'person,' except when used by way of contrast, includes not only human beings, but bodies politic or corporate.").

And we agree with Defendants that Webb waived all non-jurisdictional challenges to removal. Although the district court did not address this argument, we "may affirm on any ground" supported by the record. *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1256 (10th Cir. 2011) (citations omitted). "A motion to remand the case [to state court] on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal." 28 U.S.C. § 1447(c). The Defendants filed their notice of removal on March 9, 2020, so the April 23 filing over 30 days later makes Webb's motion (on non-jurisdictional grounds) untimely.

## II.     Dismissal

The district court granted the Defendants' motion to dismiss, concluding that the amended complaint failed to state a claim; was time-barred; and constituted the unauthorized practice of law (Webb purported to represent his brothers). The court also ruled that Webb lacked standing to represent his father's estate. The district court reasoned that Webb's amended complaint failed to state a claim because it identified no legal theory for relief. In addition, the district court ruled that any claims would be time-barred, because Webb filed this lawsuit seven years after the relevant events and the longest potentially applicable statute of limitations is five years. The district court considered whether a gratuitous-bailment claim might survive had Webb adequately

4

asserted such a claim. But it concluded that even this claim would succumb to Oklahoma's statute of limitations. It relied on *Cook v. Bingman*, 179 P.2d 470 (Okla. 1947), for the principle that a plaintiff cannot toll a statute of limitations by demanding the return of property outside the limitations period.

On appeal, Webb argues that he has an "airtight case," that the court did not apply the "liberally construed standard afforded pro se litigants," and that "all issues were denied improperly." Opening Br. 2, 4. The Defendants argue that the district court correctly ruled that Webb has failed to state a claim, and that if he had, any conceivable claim from the factual allegations would extend past the statute of limitations.

For the reasons given by the district court in its thorough order, we affirm on statute-of-limitations grounds. "[W]e review de novo the dismissal of an action under Rule 12(b)(6) based on the statute of limitations." *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012) (internal quotation marks and citations omitted). Here, any potentially applicable legal theories would exceed Oklahoma's conceivably applicable two- to five-year limitation periods. *See* Okla. Stat. Ann. Tit. 12, § 95(A). This bars Webb's operative fact allegations, which arise from the 2012 events.[2] And we agree with the district court that even if Webb had asserted a claim for conversion by a gratuitous bailee, the applicable two-year limitation period "for taking, detaining, or

---

[2] This bars these claims even liberally construing his Amended Complaint as claiming intentional infliction of emotional distress based on the desecration of his father's remains months after Webb lent the ashes. *See* 12 Okl. St. Ann. tit. 12, § 95(A); *cf. Computer Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002) (describing recognition of the tort of intentional infliction of emotional distress).

injuring personal property, including actions for the specific recovery of personal property" would bar the claim.[3] *See* Okla. Stat. Ann. tit. 12, § 95(A)(3).

We do not address Webb's other arguments that a third party fraudulently settled this lawsuit, or that the Defendants and federal court officers colluded. Webb raises these for the first time on appeal, and "[g]enerally, this court does not consider arguments raised for the first time on appeal." *Strauss v. Angie's List, Inc.*, 951 F.3d 1263, 1266 n.3 (10th Cir. 2020) (citation omitted). We decline to exercise our discretion to consider these arguments. *See Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 721 (10th Cir. 1993) (collecting cases when we have exercised discretion). Having affirmed the district court's dismissal, we also decline to grant Webb's request for an attorney.

## CONCLUSION

For the foregoing reasons, we affirm the district court.

Entered for the Court

Gregory A. Phillips
Circuit Judge

---

[3] Even if Webb and the Defendants' relationship was other than bailment, this rule would bar claims perfected on Webb's demand. And in support of any Oklahoma contract claim, Webb has failed to allege any agreement with mutual consideration requiring the Defendants to hold the remains until burial. *See* Okla. Stat. Ann. tit. 15, §§ 1–2 (providing a contract is "an agreement to do or not to do a certain thing" that requires consideration).