FILED
United States Court of Appeals
Tenth Circuit

March 4, 2021

Christopher M. Wolpert
Clerk of Court

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

_____

SHUN CHEN NI,

     Petitioner,

v.

ROBERT M. WILKINSON, Acting
Attorney General of the United
States,*

     Respondent.

No. 20-9520
(Petition for Review)

_____

**ORDER AND JUDGMENT**\*\*
_____

Before **BACHARACH**, Circuit Judge, **LUCERO**, Senior Circuit Judge, and
**PHILLIPS**, Circuit Judge.

_____

---

\*     During the pendency of Mr. Ni's petition for review, Mr. Robert M.
Wilkinson became Acting Attorney General of the United States. We've
thus substituted General Wilkinson as the respondent. *See* Fed. R. App. P.
43(c)(2).

\*\*     We conclude that oral argument would not materially help us to
decide the appeal. *See* Fed. R. App. P. 34(a)(2)(C); 10th Cir. R. 34.1(G).
So we have decided the appeal based on the record and the parties' briefs.

     Our order and judgment does not constitute binding precedent except
under the doctrines of law of the case, res judicata, and collateral estoppel.
But the order and judgment may be cited for its persuasive value if
otherwise appropriate. *See* Fed. R. App. P. 32.1(a); 10th Cir. R. 32.1(A).

The issue here involves the scope of the Board of Immigration Appeals' discretion over motions to reopen. This issue emerged after two Chinese citizens, Mr. Shun Chen Ni and his wife (Ms. Liying Qiu), had applied for asylum, withholding of removal, and protection under the Convention Against Torture based on fear of Chinese persecution against Christians. The Immigration Judge and Board of Immigration Appeals denied the couple's applications.

Both Mr. Ni and Ms. Qiu then sought to reopen their proceedings, claiming that conditions in China had worsened for Christians. The motions to reopen were denied, and Mr. Ni and Ms. Qiu filed petitions for review. We denied Mr. Ni's petition for review, reasoning that China's oppression of Christians had not materially changed. *Ni v. Sessions*, 702 F. App'x 674, 676 (10th Cir. 2017) (unpublished).

Though we had denied Mr. Ni's petition for review, we granted his wife's, concluding that the Board of Immigration Appeals had erred in downplaying her evidence of increased persecution against Christians from 2011 to 2015. *Qiu v. Sessions*, 870 F.3d 1200, 1202–04, 1206 (10th Cir. 2017).

After we determined that conditions in China had materially worsened for Christians, Mr. Ni moved again for reopening. Despite our opinion in his wife's case, the Board of Immigration Appeals concluded

2

again that Mr. Ni had failed to show a material change in country conditions.

This conclusion is unsupportable. Mr. Ni's evidence of worsening conditions in China largely mirrored his wife's evidence, which had led us to grant her petition for review. Mr. Ni's evidence was even stronger than his wife's because China had recently adopted a regulatory crackdown on practicing Christians. We thus grant Mr. Ni's petition for review.

## I. We apply the abuse-of-discretion standard to the Board's determination that conditions in China did not materially worsen.

Mr. Ni is seeking review of his second motion to reopen filed roughly ten years after the order of removal. So the threshold issue is whether the motion to reopen was filed out-of-time.

A noncitizen can ordinarily seek reopening only in the 90-day period following the removal order. 8 U.S.C. § 1229a(c)(7)(C)(i). But the 90-day deadline does not apply when a noncitizen seeks reopening based on material evidence of changes in country conditions that couldn't have been discovered at the time of the removal proceeding.[1] Applying this test, the

---

[1] The statute refers to a change in conditions since the "previous proceeding." 8 U.S.C. § 1229a(c)(7)(C)(i). The first motion to reopen could arguably be considered "the previous proceeding." But when a noncitizen has filed two motions to reopen, the Board compares the new country conditions to the conditions at the time of the removal proceeding. *In re S-Y-G-*, 24 I. & N. Dec. 247, 253 (BIA 2007).

3

Board concluded that Mr. Ni had not shown a material change in country conditions.

In reviewing that conclusion, we apply the abuse-of-discretion standard. *Qiu*, 870 F.3d at 1202. The Board abuses its discretion when making a factual finding unsupported by the evidence. *Id+*

## II. The law-of-the-case doctrine does not prevent consideration of the merits.

Mr. Ni's evidence resembled the kind of evidence that he had presented for his first motion to reopen. And, as noted, we upheld the denial of his first motion to reopen. The government thus argues that the law-of-the-case doctrine prevents relief. We disagree.

The law-of-the-case doctrine does not apply when the controlling authority has changed. *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011). And the controlling authority changed here through our precedential opinion in *Qiu*.

As the government points out, Mr. Ni's second motion to reopen included much of the evidence that he'd presented with his first motion. That evidence largely duplicated the evidence that his wife had presented with her own motion to reopen. We regarded the wife's evidence as compelling proof of increased persecution of Christians from 2011 to 2015. *Qiu*, 870 F.3d at 1206.

We reached a different conclusion when considering virtually identical evidence in Mr. Ni's first petition for review. But our opinion there was not precedential. In contrast, our opinion in his wife's case (*Qiu*) was precedential. Given the existence of virtually identical evidence in the two petitions for review, our precedential opinion in *Qiu* constitutes a change in our controlling authority. The law-of-the-case doctrine thus does not apply.

**III.  Given the controlling authority in *Qiu*, we conclude that the Board abused its discretion in finding no material change in country conditions.**

In *Qiu*, we considered whether China's oppression of Christians had worsened materially from 2011 to 2015. Here we are considering whether Chinese oppression worsened materially from 2009 to 2019. As a result, we could uphold the Board's decision only if (1) Nr. Ni's evidence was inferior to the evidence that his wife had presented or (2) the evidence showed improvement in China's treatment of Christians from 2015 to 2019.

There is no basis for either conclusion. With his second motion to reopen, Mr. Ni presented

- evidence resembling the material that his wife had presented and

- evidence of increased oppression following our decision in his wife's case.

In *Qiu*, the Court relied mainly on five evidentiary items: (1) two news articles referring to a China Aid Report, (2) the Council on Foreign

5

Relations' 2015 report on Christianity in China, (3) the U.S. Commission on International Religious Freedom's Annual Report for 2015, (4) the U.S. State Department's 2014 Country Report on Human Rights Practices, and (5) a sworn statement by Ms. Qiu's mother. *Id.* at 1202–04. Mr. Ni provided similar evidence in his second motion to reopen.

*News articles about a China Aid report.* In Ms. Qiu's case, we discussed two news articles about a China Aid report, which had noted (1) a 300% increase in persecution against Christians from 2013 to 2015, (2) a growing sense of crisis, and (3) a drastic increase from 2013 to 2014 in the number of Chinese citizens imprisoned for their religious practices. *Id.* at 1202.

Mr. Ni similarly submitted news articles detailing the increase in persecution of Christians in China. One of the articles explained that "the Chinese government [was] waging the most severe suppression of Christianity in the country since religious freedoms [had been] granted by the Chinese constitution in 1982." R. at 52. Another article presented a quotation from the founder of China Aid, who stated that China's crackdown in 2018 had represented the worst oppression against Christians in 30 years. *Id.* at 48.

*The Council on Foreign Relations' 2015 Report on Christianity in China.* In *Qiu*, the Court also considered a report from the Council on Foreign Relations. This report noted China's movement upward from 37th

6

in 2014 to 29th in 2015 on a list of the world's greatest persecutors of Christianity. *Qiu*, 870 F.3d at 1202.

Mr. Ni didn't present a similar listing. But he did submit reports by religious experts stating that the Chinese government was engaging in the greatest crackdown on Christianity in 30 years. R. at 48, 52, 62.

*The U.S. Commission on International Religious Freedom's Annual Report for 2015.* In *Qiu*, we also relied on an annual report by the U.S. Commission on International Religious Freedom, which stated that the Chinese government had "engaged in unprecedented violations" against Protestant Christians in 2014. *Qiu*, 870 F.3d at 1202–03 (internal quotation marks omitted). The report noted that these violations had included the destruction or removal of crosses from at least 400 Christian churches.

Mr. Ni presented a more recent annual report from the U.S. Commission on International Religious Freedom. This report stated that in 2018, "[t]he Chinese government . . . [had] intensified its crackdown" by closing or demolishing thousands of churches or religious sites. R. at 61. In the report, the Commission pointed out that the government not only had closed churches but also had increased restrictions, like banning online sales of the Bible and depiction of Christian symbols. *Id.*

*The U.S. State Department's International Religious Freedom Report for 2014.* *Qiu* also relied on the U.S. State Department's International Religious Freedom Report for 2014. This report explained that the Chinese

7

government had penalized lawyers for taking cases "defending house-church activists." *Qiu*, 870 F.3d at 1203 (ellipsis & internal quotation marks omitted).

Mr. Ni presented similar evidence, explaining that Chinese authorities had revoked professional licenses for attorneys who defended Christians. R. at 82.

*Sworn statement by Ms. Qiu's mother.* In *Qiu*, the Court also relied on a sworn statement by Ms. Qiu's mother, who had stated that (1) she suffered physical harm because of her practice of Christianity and (2) the Chinese government intended to punish Ms. Qiu. *Qiu*, 870 F.3d at 1203.

Mr. Ni presented his own sworn statement by Ms. Qiu's mother. In this sworn statement, the mother explained that her religious persecution in China had worsened after 2016. R. at 24.

## IV. Mr. Ni presents other evidence, unavailable to Ms. Qiu, of increased persecution from regulations adopted in 2018.

As noted, Ms. Qiu showed increased persecution from 2011 to 2015. But Mr. Ni pointed out that the Chinese government had intensified its oppression of Christians in 2018. In that year, the Chinese government adopted regulations banning online sales of the Bible, prohibiting celebration of Christmas in many cities, requiring prior approval for Christians to travel abroad, forcing churches to install cameras to allow police surveillance, requiring the removal of crosses from churches, and

8

prohibiting minors from participating in religious activities. R. at 48, 66-67, 75, 100. These regulations led Vice President Pence to conclude in 2018 that "religious persecution [was] growing in both scope and scale in [China]." *Id.* at 67 (internal quotation marks omitted).

* * *

Given the heightened persecution wrought by the 2018 regulations, Mr. Ni's evidence of worsened conditions is even more compelling than his wife's. Given our conclusion that the Board abused its discretion in upholding the denial of Ms. Qiu's motion to reopen, we are constrained to reach the same conclusion here. We thus conclude that the Board abused its discretion by upholding the denial of Mr. Ni's second motion to reopen. Given this conclusion, we grant Mr. Ni's petition for review and remand to the Board for further proceedings.

Entered for the Court


Robert E. Bacharach
Circuit Judge

9