FILED
United States Court of Appeals
Tenth Circuit

December 18, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

STURGEON STEWART,

      Plaintiff-Appellant,

v.

(FNU) BEACH; (FNU) WILSON,
Officers, El Dorado Correctional Facility,
in their individual capacities; RAY
ROBERTS, Warden, El Dorado
Correctional Facility, in his individual
capacity,

      Defendants-Appellees.

No. 12-3013

_____

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 5:08-CV-03295-JAR-KGG)**

_____

Submitted on the briefs:[*]

Holly A. Dyer, Daniel J. Buller, of Foulston Siefkin LLP, Wichita, Kansas, for
Plaintiff-Appellant.

Steven R. Fabert, Assistant Attorney General, Topeka, Kansas, for
Defendants-Appellees.

_____

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal.  _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.

Before **KELLY**, **O'BRIEN**, and **MATHESON**, Circuit Judges.

**KELLY**, Circuit Judge.

Sturgeon Stewart appeals from the district court's judgment in favor of defendants on his claims under the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. §§ 2000cc to 2000cc-5 (RLUIPA). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.    BACKGROUND

Stewart was an inmate in the custody of the Kansas Department of Corrections (KDOC) and confined at the El Dorado Correctional Facility (El Dorado). In accordance with his Rastafarian religious beliefs, he does not cut or comb his hair, which he keeps in dreadlocks.

In December 2006, Stewart learned that his mother had been diagnosed with cancer. To be closer to her, Stewart requested a voluntary transfer to the Lansing Correctional Facility (Lansing). His request was granted. On the day of the transfer, January 23, 2007, one of the defendants, Officer Agnes Beach,[1] refused to allow Stewart to board the transport vehicle because he could not comb out his dreadlocks, as was required by the KDOC policy then in effect. In relevant part, that policy, Internal Management Policy and Procedure (IMPP) § 12-110, provided:

---

[1]    Although defendant Beach is now known as Agnes Linaweaver, we refer to her by the name Beach, as listed in the caption of the complaint.

> Prior to boarding a KDOC Transportation Unit vehicle, inmates may be
> required to comb out their hair as a security procedure against
> contraband. . . . To ensure that this procedure can be effectively
> accomplished, inmates shall not have hair braids, corn rows, or other
> hair arrangements wherein contraband can be easily hidden, and which
> cannot be readily combed out.

R. at 38. Beach consulted with her supervisor, defendant Thad Wilson, who gave Stewart a choice—either cut his hair or forego the transfer. Stewart informed Beach and Wilson that he was a practicing Rastafarian and therefore was strictly forbidden to cut his hair. Stewart suggested the officers pat down his hair and use a metal detector to search for contraband, but Wilson cancelled the transfer and sent Stewart to administrative segregation.[2] Stewart alleged that he also spoke about having to cut his hair with a Unit Team member and with the El Dorado Warden, defendant Ray Roberts.

On January 30, Stewart filed a grievance seeking a religious exception to IMPP § 12-110 and suggesting that his hair could be searched by hand. The grievance was denied on the ground that the policy represented a safety and security measure that had to be followed. Stewart filed a grievance appealing that denial to Roberts. Roberts received the appeal on February 5, 2007, and denied it the same day. Also on February 5, Stewart cut off his dreadlocks. He was transferred to Lansing the next day.

---

[2]   It appears from the record that Stewart was already housed in administrative segregation prior to this event. In any event, it does not appear he sought damages for his placement in segregation after his initial transfer was cancelled.

In December 2008, Stewart filed this action pro se. He asserted that defendants essentially forced him to choose between adhering to his religious beliefs and transferring closer to his ailing mother, and that this violated his rights under the Free Exercise Clause and RLUIPA. He sought damages and a declaration that defendants' actions violated those rights. He was permitted to proceed *in forma pauperis*, and service on Beach and Roberts was effected through the United States Marshal's Office in February 2009. Wilson, who had retired from the KDOC, was not served at that time.

On August 2, 2010, Judge Monti L. Belot ruled on the parties' cross-motions for summary judgment, granting Beach and Roberts's motion in part and denying it in part, and denying Stewart's motion. Judge Belot first concluded that factual disputes existed regarding the Free Exercise Claim: (1) whether defendants' position on Stewart's transfer placed substantial pressure on him to engage in conduct contrary to a sincerely held religious belief in order to be closer to his cancer-stricken mother, and (2) whether IMPP § 12-110 was reasonably related to legitimate penological interests in security given that there was an alternative to requiring Stewart to cut his hair—a hand search and search with a metal detector.[3] Judge Belot therefore denied summary judgment to all parties on the Free Exercise claim.

---

[3] As Judge Belot noted, IMPP § 12-110 was eventually changed to permit the use of hand searches and metal detectors on hair that could not be combed out.

- 4 -

Judge Belot next ruled that the claims against Roberts should be dismissed for lack of personal participation because his only act was to deny Stewart's grievance appeal.

Turning to Beach's request for qualified immunity, Judge Belot defined the right at issue to be "the right to reasonably exercise one's religion in prison," R. at 162, and concluded that the right was clearly established under *Makin v. Colorado Department of Corrections*, 183 F.3d 1205, 1210-11 & n.4 (10th Cir. 1999). On that basis, Judge Belot denied qualified immunity to Beach.

Finally, Judge Belot dismissed the RLUIPA claim on the ground that RLUIPA does not permit claims against individuals. In so doing, Judge Belot noted the absence of Tenth Circuit authority on the matter and consequently followed the lead of three other circuits.[4]

On August 4, 2010, Judge Belot granted Stewart's motion for appointment of counsel.

In February 2011, the case was reassigned to Judge Julie A. Robinson, and by April 2011, Wilson was served. On October 17, 2011, Beach and Wilson filed a joint motion to dismiss, asserting that the complaint failed to state a claim because the

---

[4]     Judge Belot also determined that Mr. Stewart's request for a declaratory judgment was moot. Mr. Stewart "does not appeal that ruling." Aplt. Opening Br. at 4 n.2.

alleged facts did not establish a constitutional violation and because they were entitled to qualified immunity.[5]

Judge Robinson granted the motion on the ground that Beach and Wilson were entitled to qualified immunity. Judge Robinson first determined that Judge Belot's earlier rulings did not preclude her from reconsidering qualified immunity because those rulings were interlocutory, and the law-of-the-case doctrine does not apply to such rulings unless a party is prejudiced by lack of notice and the opportunity to be heard, which was not the case here.

Judge Robinson then turned to qualified immunity. Judge Belot had defined the constitutional right at issue as "the right to reasonably exercise one's religion in prison," R. at 162, but Judge Robinson considered this too broad and instead examined "whether it was clearly established that [defendants] violated [Stewart's] First Amendment free exercise right by requiring him to cut his hair for security reasons." *Id.* at 249. Judge Robinson determined that the right was not clearly established because the relevant Tenth Circuit law (i.e., cases regarding prison grooming regulations) was unsettled: The cases tended to turn on a fact-specific inquiry and reached differing conclusions regarding the constitutionality of the regulation at issue. Looking outside of the Tenth Circuit yielded similarly mixed results and therefore provided no basis for concluding that defendants' conduct

---

[5]    Wilson also sought dismissal because he was served outside of the applicable statute of limitations. The district court disagreed, and Wilson has not appealed that ruling.

- 6 -

violated a clearly established right.  Accordingly, Judge Robinson granted the motion to dismiss.  This appeal followed.

## II.    DISCUSSION

Stewart raises a number of issues on appeal.  We will address those issues in the order we find to be most analytically logical.

### A.    First Amendment claim against Roberts

Stewart argues that Judge Belot should not have granted summary judgment to Roberts on the Free Exercise claim because there remain genuine issues of fact regarding Roberts's "participation, exercise of control, and supervision."  Aplt. Opening Br. at 31.  But the only such fact he points to is Roberts's summary denial of his grievance appeal.  Stewart claims that when Roberts denied the appeal, he knew that Stewart was a practicing Rastafarian and had proposed less restrictive alternatives to cutting his hair.  He also points out that at the time Judge Belot granted Roberts's motion for summary judgment, he was pro se and incarcerated, and there had been no discovery.

We reject these arguments.  A § 1983 claim requires "personal involvement in the alleged constitutional violation."  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).  The "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."  *Id.*  Whatever knowledge Roberts may have had when he denied the appeal, his only involvement was to deny the grievance appeal, which

is insufficient for § 1983 liability.  Further, Stewart has not suggested how his incarceration, his then-pro se status, or the lack of discovery affects this conclusion.

## B.    Law of the case doctrine

"The law of the case doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1251 (10th Cir. 2011) (internal quotation marks omitted).  Relying on this doctrine, Stewart contends that Judge Belot's order denying qualified immunity was based on a question of law— whether the right at issue was clearly established—and therefore was a final and immediately-appealable decision, particularly in view of the fact that Beach did not immediately appeal that order.  He therefore concludes that Judge Robinson could not revisit the qualified immunity issue.[6]

---

[6]    In making this argument, Mr. Stewart has not drawn a distinction between defendants Beach and Wilson.  Wilson was not a party to the case when Judge Belot ruled on qualified immunity, so it appears there was no impediment to Judge Robinson later deciding whether Wilson was entitled to qualified immunity.

Furthermore, we harbor some doubt that Judge Belot's denial of qualified immunity turned solely on whether the law was clearly established.  Prior to discussing qualified immunity, Judge Belot concluded that there were disputed issues of fact precluding summary judgment for either side on Stewart's Free Exercise claim.  That conclusion is also relevant to the first part of the two-part qualified immunity analysis—whether there was a constitutional violation.  *See Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (describing the two-part analysis).  When a district court denies qualified immunity at summary judgment on the ground that there is a genuine issue of fact regarding the presence of a constitutional violation, a defendant generally may not take an interlocutory appeal. *Johnson v. Martin*, 195 F.3d 1208, 1214 (10th Cir. 1999).  But there is an exception

(continued)

- 8 -

We disagree.  Whether a prior decision constitutes law of the case is a legal issue that we review de novo.  *Anthony v. Baker*, 955 F.2d 1395, 1397 (10th Cir. 1992).  The law of the case doctrine does not apply "to rulings revisited prior to entry of a final judgment."  *Rimbert*, 647 F.3d at 1251.  Hence, "district courts generally remain free to reconsider their earlier interlocutory orders."  *Id.*  This is so "even when a case is reassigned from one judge to another in the same court."  *Id.*  "The law of the case doctrine does not bind a judge to following rulings in the same case by another judge of coordinate jurisdiction as long as prejudice does not ensue to the party seeking the benefit of the doctrine."  *Id.* (brackets and internal quotation marks omitted).

Stewart's argument suggests an exception to these rules when an order denies a motion for summary judgment seeking qualified immunity.  Although such an "order retains its interlocutory character as simply a step along the route to final judgment," *Ortiz v. Jordan*, 131 S. Ct. 884, 889 (2011), it is considered final for purposes of appeal if it "presents 'a purely legal issue,' illustratively, the determination of 'what law was "clearly established"'" at the time the defendant acted."  *Id.* at 891 (quoting *Johnson v. Jones*, 515 U.S. 304, 313 (1995)).  But this

---

to this rule when a defendant's appeal "is based on the argument that, even under the plaintiff's version of the facts, the defendant did not violate clearly established law." *Id.*  Hence, we consider it necessary to decide whether Judge Belot's order constituted the law of the case under Mr. Stewart's theory, notwithstanding what appears to us to be a mixed basis (legal and factual) for his denial of qualified immunity.

does not mean that such a decision becomes the law of the case, and beyond reconsideration of the trial court. An immediate appeal *may* be taken, but as we stated in *Haberman v. Hartford Insurance Group*, "when the material facts are not in dispute and the denial of summary judgment is based on the interpretation of a purely legal question, such a decision is appealable *after final judgment*." 443 F.3d 1257, 1264 (10th Cir. 2006) (emphasis added).[7] Thus, to the extent Judge Belot's order denying Beach qualified immunity turned on the purely legal issue of whether the constitutional right he considered to be at issue was clearly established at the time of Beach's conduct, it remained appealable even after final judgment. And to the extent that order turned on a disputed question of fact, the issue of qualified immunity would be appealable only after a trial on the merits, "but at that stage, the defense must be evaluated in light of the character and quality of the evidence received in court." *Ortiz*, 131 S. Ct. at 889. Accordingly, there is no force to Stewart's argument that Judge Belot's denial of qualified immunity was binding on Judge Robinson as the law of the case because it was a final appealable order from which Beach did not immediately appeal.

## C.    Judge Robinson's qualified immunity ruling

Qualified immunity shields "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate

---

[7]    In *Copar Pumice Co. v. Morris*, 639 F.3d 1025, 1031 (10th Cir. 2011), we considered whether *Ortiz* undermined *Haberman*'s rule and concluded that it did not.

clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "In resolving a motion to dismiss based on qualified immunity, a court must consider 'whether the facts that a plaintiff has alleged make out a violation of a constitutional right,' and 'whether the right at issue was clearly established at the time of defendant's alleged misconduct.'" *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (ellipsis omitted) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). We review dismissals based on qualified immunity de novo. *Denver Justice & Peace Comm., Inc. v. City of Golden*, 405 F.3d 923, 927 (10th Cir. 2005).

Courts have discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. Here, Judge Robinson addressed only the second prong, concluding that the right at issue was not clearly established. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) (internal quotation marks omitted).

Stewart argues that Judge Robinson's definition of the constitutional right at issue was too narrow. Again, Judge Robinson's definition was "whether it was clearly established that [Beach and Wilson] violated [Stewart's] First Amendment free exercise right by requiring him to cut his hair for security reasons." R. at 249.

- 11 -

Stewart asserts that the Supreme Court and the Tenth Circuit emphasize a broader standard and advocates for Judge Belot's definition: "the right to reasonably exercise one's religion in prison," *Id.* at 162.

We disagree with Stewart's contention that a broader standard is necessary. To be sure, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). And in some cases, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *United States v. Lanier*, 520 U.S. 259, 271 (1997) (brackets and internal quotation marks omitted). But in other cases, "general statements of the law are not inherently capable of giving fair and clear warning." *Id.* For example, in *Reichle v. Howards*, the Supreme Court recently reiterated its long-held view that "the right allegedly violated must be established, not as a broad proposition, but in a particularized sense so that the contours of the right are clear to a reasonable official." 132 S. Ct. 2088, 2094 (2012) (citations and internal quotation marks omitted). Applying this test to the free-speech claim before it, the Court concluded that "the right in question is not the general right to be free from retaliation for one's speech, but the more specific right to be free from a retaliatory arrest that is otherwise supported by probable cause." *Id.*

So too here, Judge Robinson's formulation of the First Amendment free-exercise right at issue is more specific—to be free from having to cut one's hair

- 12 -

for prison security reasons based on one's sincerely held religious beliefs. We might add that cutting is apparently required because Stewart's hair could not be combed out. Aplt. Reply Br. at 1-3. Stewart's formulation—the right to reasonably exercise one's religion in prison—reflects an admittedly established First Amendment right prisoners retain: "a reasonable opportunity to pursue [one's] religion. *Mosier v. Maynard*, 937 F.2d 1521, 1525 (10th Cir. 1991). But "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Thus, "what constitutes a reasonable opportunity [to pursue one's religion] must be evaluated with reference to legitimate penological objectives." *Mosier*, 937 F.2d at 1525.

The additional level of specificity is helpful to focus on case law that would have given Beach and Wilson "reasonable warning that the conduct then at issue violated constitutional rights." *Lanier*, 520 U.S. at 269. Contrary to Stewart's suggestion, a more precise definition does not lead to an *overreliance* on factual similarity but to a *proper* reliance. *See Mecham v. Frazier*, 500 F.3d 1200, 1206 (10th Cir. 2007) (explaining that "the facts of the cases compared need not be identical, [but] they must be sufficiently analogous to satisfy the particularized context necessary to support liability" (citation omitted)). Applying Stewart's formulation would encompass a very broad spectrum of conduct directed at prisoners

and result in the examination of cases that would not have given Beach and Wilson the requisite warning under the facts of this case.[8]

Stewart alternately contends that even under a more specific definition, Beach and Wilson violated a clearly established constitutional right. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Thomas*, 607 F.3d at 669 (internal quotation marks omitted). Stewart has pointed to no Supreme Court cases and only one Tenth Circuit case, *Longstreth v. Maynard*, 961 F.2d 895 (10th Cir. 1992). Stewart cites *Longstreth* for its proposition that "[a]lthough religious challenges to prison grooming codes do not always succeed, courts have consistently held that at a minimum the challenges do raise significant claims which require full evidentiary development." *Id.* at 903 n.7.

We see nothing in *Longstreth* that clearly established that a corrections officer violates a prisoner's free exercise right by requiring the prisoner to cut his hair for security reasons because it cannot be readily combed out. *Longstreth*, which

---

[8]     We acknowledge that in *Makin v. Colorado Department of Corrections*, we considered the "general right to the reasonable opportunity to exercise one's religion" to be the best formulation to encompass the defendants' refusal to accommodate the religious dietary requirements of a prisoner in segregation during the Muslim holy month of Ramadan. 183 F.3d at 1210 n.4. In so doing, we rejected the narrower right proposed by the defendants: "the parameters of special feeding accommodation for the celebration of Ramadan." *Id.* We do not find *Makin* persuasive as applied to the facts of this case because Judge Robinson's definition was not as narrow as the definition we rejected in *Makin*.

comprised three consolidated appeals, concerned a prison policy that prohibited hair more than three inches in length and that wavered over time between permitting and disallowing religious exemptions. As to one plaintiff, *Longstreth* considered there to be no factual dispute regarding the reasons for the policy but remanded for a determination whether the denial of an exemption for religious reasons was proper because there were disputed factual issues regarding the sincerity of the prisoner's religious beliefs. *Id.* at 901-02. The other two plaintiffs had sought preliminary injunctive relief against the requirement that they cut their hair. The district courts denied preliminary relief on the ground that plaintiffs were not likely to succeed on the merits of their claims. We reversed. Analyzing whether the plaintiffs had shown there were "questions so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate inquiry," we concluded only that there were "serious and substantial questions" regarding "[t]he impact of a prison regulation which may impinge on tenets of an inmate's religious beliefs." *Id.* at 903.

In the absence of controlling authority, we may conclude that a constitutional right is clearly established if there is a "robust consensus of cases of persuasive authority." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2084 (2011) (internal quotation marks omitted). To that end, we have reviewed all of the extra-circuit cases Stewart has identified, as well as those cases Judge Robinson discussed in her order. We agree with Judge Robinson's conclusion that they cut both ways. In some cases, courts have found that prison regulations requiring haircuts or prohibiting beards

- 15 -

violate a prisoner's free exercise rights.  *See, e.g.*, *Shepherd v. Sanchez*, 27 F. App'x 31, 33 (2d Cir. 2001); *Benjamin v. Coughlin*, 905 F.2d 571, 576-77 (2d Cir. 1990); *Teterud v. Burns*, 522 F.2d 357, 359 & n.1 (8th Cir. 1975); *Wright v. Raines*, 457 F. Supp. 1082, 1088-90 (D. Kan. 1978).  *Shepherd* and *Benjamin* involved Rastafarian plaintiffs.  In other cases, courts have found that such regulations did not offend the First Amendment because the regulations were reasonably related to legitimate penological interests.  *See, e.g.*, *Henderson v. Terhune*, 379 F.3d 709, 715 (9th Cir. 2004); *Williams v. Wilkinson*, No. 96-3715, 1997 WL 809971, at *3 (6th Cir. Dec. 18, 1997) (unpublished); *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996); *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995); *Cole v. Flick*, 758 F.2d 124, 131 (3d Cir. 1985); *Perry v. Davies*, 757 F. Supp. 1223, 1223-24 (D. Kan. 1991).  *Williams*, *Harris*, and *Hicks* involved Rastafarian plaintiffs.

If this mixed bag were not enough, there are other problems with some of the cases Stewart relies on.  *Reed v. Faulkner*, 842 F.2d 960 (7th Cir. 1988), concerned the enforcement of a grooming policy against Rastafarians but not against American Indians.  The district court held a bench trial and concluded that the policy did not violate the Free Exercise Clause.  Reversing, the Seventh Circuit determined that "[t]he regulation on hair length is plausibly supported by considerations of safety and security," *id.* at 963, but remanded for further consideration because of two serious problems with the district court's findings.  First, the appellate court considered deficient the district court's finding that the regulation was supported by "a security

concern for potential racial conflict from the professed Rastafarian belief that dreadlock symbolizes black superiority." *Id.* at 962; *see also id.* at 964-65 (discussing this finding). Second, the appellate court found fault with the district court's handling of the equal protection claim. Thus, *Reed* does not lend particular support to Stewart's argument that the right at issue here was clearly established.

Two other cases Stewart relies on, *Teterud* and *Wright*, turn in relevant part on the conclusion that there were less restrictive means of furthering a penological interest. *Teterud*, 522 F.2d at 362-63; *Wright*, 457 F. Supp. at 1089-90. This is a stricter standard than *Turner*'s legitimate-penological-interest test, which considers the absence of ready alternatives imposing no more than *de minimis* cost to the prison, as evidence that a prison regulation is reasonable, *Turner*, 482 U.S. at 90-91. So *Teterud* and *Wright* are of little help to an officer trying to determine whether enforcement of a regulation or policy infringes a prisoner's free exercise right.[9] Regarding *Dreibelbis v. Marks*, 675 F.2d 579 (3d Cir. 1982), Stewart fails to note that after remand and on a subsequent appeal, the circuit court affirmed the conclusion that the regulation at issue was a valid restriction on the prisoner's religious freedom, *see Dreibelbis v. Marks*, 742 F.2d 792, 794-95 (3d Cir. 1984). Further, another of Stewart's cases, *Singh v. Goord*, 520 F. Supp. 2d 487

---

[9] Using the same standard in a case involving the Religious Freedom Restoration Act of 1993, the court in *Harris v. Chapman* reached the opposite conclusion, holding "that a reasonable hair length regulation satisfies the least restrictive means test." 97 F.3d at 504. This further indicates how unclear the relevant constitutional right was at the time of the incident here.

- 17 -

(S.D.N.Y. 2007), was decided after the incident at issue here, so it is not relevant to whether the law was clearly established.

Is sum, from our survey of these cases, the most we can say is that Beach and Wilson had warning that enforcement of a grooming policy that required hair be capable of being combed out (or cut) *might* violate Stewart's free exercise right if the policy was not reasonably related to legitimate penological interests. But we cannot say that it was clearly established that their enforcement of the KDOC policy violated Stewart's constitutional rights. We therefore conclude that Beach and Wilson are entitled to qualified immunity on Stewart's First Amendment claim.

### D. RLUIPA claim

RLUIPA "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005). It does so by limiting the burdens that a government may place on a prisoner's free exercise rights:

> No *government* shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the *government* demonstrates that imposition of the burden on that person—
>
> > (1) is in furtherance of a compelling governmental interest; and
> >
> > (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a) (emphasis added). RLUIPA also provides a cause of action against a government: "A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." *Id.* § 2000cc-2(a). Thus, by its plain terms, RLUIPA applies to a "government."

RLUIPA defines "government," in relevant part, as "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law." *Id.* § 2000cc-5(4)(A)(i)-(iii). Stewart focuses on subclause (iii)'s use of the word "person" in arguing that Judge Belot erred in concluding that RLUIPA does not permit a claim against individual defendants. Stewart relies on a number of district court decisions from various circuits holding that RLUIPA permits such a claim, but we are persuaded by the later circuit court decisions that have held it does not.

The interpretation of a statute is a question of law that we review de novo. *McGraw v. Barnhart*, 450 F.3d 493, 497 (10th Cir. 2006).[10] Four circuits have held

---

[10] We disagree with the appellees that Stewart has waived review of this issue through the invited error doctrine, which "precludes a party from arguing that the district court erred in adopting a proposition that the party had urged the district court to adopt," *United States v. Deberry*, 430 F.3d 1294, 1302 (10th Cir. 2005). Appellees argue that in his response to their motion to dismiss, Stewart invited Judge Robinson to agree with Judge Belot's dismissal of the RLUIPA claim, and that he cannot now complain about Judge Robinson's treatment of the claim as abandoned. But the only statement in Stewart's response regarding the RLUIPA claim was his observation that "[t]he RLUIPA claim was dismissed with Judge Belot finding that individual capacity suits were not available under RLUIPA." R. at 218. Judge Robinson's view

(continued)

- 19 -

that, despite defining the term "government" to include "any other person acting under color of State law," RLUIPA does not provide a cause of action against individual defendants in their individual capacities. *See Sharp v. Johnson*, 669 F.3d 144, 153-55 (3d Cir. 2012); *Nelson v. Miller*, 570 F.3d 868, 885-89 (7th Cir. 2009); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 327-29 (5th Cir. 2009), *aff'd*, *Sossamon v. Texas*, 131 S. Ct. 1651 (2011); *Smith v. Allen*, 502 F.3d 1255, 1271-75 (11th Cir. 2007), *abrogated on other grounds by Sossamon*, 131 S. Ct. at 1655, 1657 n.3 (abrogating *Smith* as to its holding that RLUIPA abrogated a state's sovereign immunity from suit for money damages). In these cases, the courts have focused on the fact that Congress enacted RLUIPA pursuant to the Spending Clause of the Constitution. *See* 42 U.S.C. § 2000cc-1(b)(1) (stating that RLUIPA "applies in any case in which . . . the substantial burden [on religious free exercise rights] is

---

of this statement was that Stewart had "concede[d] that the RLUIPA claim was dismissed by Judge Belot and he does not attempt to assert that claim against Defendant Wilson." *Id.* at 241. Judge Robinson then stated: "Although Judge Belot did not dismiss the RLUIPA claim against Defendant Wilson because he had not yet been served, the Court finds that [Stewart] treats this claim as dropped, and the Court therefore dismisses it." *Id.* at 241-42.

In our view, Stewart did not invite Judge Robinson to adopt any position regarding the RLUIPA claim or waive his right to appeal Judge Belot's ruling by simply stating, in his response to the motion to dismiss, what Judge Belot's ruling was. Moreover, Beach and Wilson had no occasion to raise the RLUIPA issue in their motion to dismiss because the claim had already been dismissed by the time Wilson was served. Hence, Stewart had no reason to address it again in his response.

imposed in a program or activity that receives Federal financial assistance").[11] They have noted the similarity between RLUIPA's reference to "any other person acting under color of State law" and the "under color of" language in § 1983, which does create a cause of action against state employees in their individual capacities. But ultimately these courts have concluded that "Spending Clause legislation is not legislation in its operation; instead, it operates like a contract, and individual RLUIPA defendants are not parties to the contract in their individual capacities." *Sossamon*, 560 F.3d at 328 (footnote omitted); *see also Sharp*, 669 F.3d at 154; *Nelson*, 570 F.3d at 887; *Smith*, 502 F.3d at 1272-73. Thus, "only the grant recipient—the state—may be liable for [a] violation [of RLUIPA]." *Sossamon*, 560 F.3d at 328. "[T]he Spending Power cannot be used to subject individual defendants, such as state employees, to individual liability in a private cause of action." *Smith*, 502 F.3d at 1274.[12]

---

[11]     Congress also invoked its Commerce Clause power by stating that RLUIPA "applies in any case in which . . . the substantial burden [on religious free exercise rights] affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b)(2). However, we conclude that the Spending Clause is "the most natural source of congressional authority to pass RLUIPA," because, as Stewart has invoked RLUIPA, "there is no evidence concerning the effect of the substantial burden on 'commerce with foreign nations, among the several States, or with Indian tribes.'" *Sossamon*, 560 F.3d at 328 n.34. Thus we do not analyze whether Congress's reliance on the Commerce Clause supports a cause of action under RLUIPA against individual defendants in their individual-capacities.

[12]     The Fourth Circuit has reached the same conclusion, although on the ground that RLUIPA does not provide clear notice to the states that their receipt of federal

(continued)

- 21 -

We agree with the analysis of these courts and therefore hold that there is no cause of action under RLUIPA for individual-capacity claims.[13]  Accordingly, we affirm Judge Belot's ruling on this issue.

## III.  CONCLUSION

The judgment of the district court is AFFIRMED.

---

funding is conditioned on subjecting its officials "to an individual capacity damages claim."  *Rendelman v. Rouse*, 569 F.3d 182, 189 (4th Cir. 2009).

[13]  The record does not reflect whether KDOC receives federal funding, but the parties have not contested this point, and it appears that all states receive such funding.  *See Cutter*, 544 U.S. at 716 n.4 ("Every State . . . accepts federal funding for its prisons.").