**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

FILED
United States Court of Appeals
Tenth Circuit

**February 20, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

ROGER D. PFEIL,

     Plaintiff - Appellant,

v.

ROBERT LAMPERT, in his official
capacity as WYOMING DEPARTMENT
OF CORRECTIONS DIRECTOR and in
his individual capacity; MICHAEL
PACHECO, in his official capacity as
WYOMING DEPARTMENT OF
CORRECTIONS HONOR FARM
WARDEN and in his individual capacity,

     Defendants - Appellees.

No. 14-8035
(D.C. No. 2:12-CV-00184-SWS)
(D. Wyo.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **McKAY**, and **McHUGH**, Circuit Judges.

     Plaintiff Roger D. Pfeil, at all relevant times a Wyoming state prisoner,

brought this action against Wyoming Department of Corrections (WDOC) Director

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Robert Lampert and Wyoming Honor Farm (WHF) Warden Michael Pacheco, in their individual and official capacities, alleging the denial of his rights under the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), actionable pursuant to 42 U.S.C. § 2000cc-1, and the Free Exercise Clause of the First Amendment, actionable under 42 U.S.C. § 1983. He later added claims for the denial of his rights under the Americans with Disabilities Act (ADA) and unconstitutional retaliation for protected activities related to this action. In a published decision on cross-motions for summary judgment, the district court ruled for defendants on all claims. *See Pfeil v. Lampert*, 11 F. Supp. 3d 1099 (D. Wyo. 2014). As explained below, we dismiss the appeal for mootness insofar as it involves RLUIPA claims and otherwise affirm the district court for substantially the reasons stated in its decision.

## PROCEDURAL SUMMARY

Mr. Pfeil has, until very recently, been incarcerated by the State of Wyoming since pleading guilty to second-degree murder in 1997. When he filed this action in August 2012, he was confined at the WHF, where he had been placed in May 2009. His complaint alleged that defendants had impeded the free exercise of his religious rights as a practicing Catholic in two primary respects: (1) enforcing a new policy prohibiting inmates from possessing hardbound books, thereby depriving him of his two bibles and a religious commentary,[1] which were printed in a font size that he

---

[1]     He also complained of the loss of a standard secular dictionary, which would not appear to raise any free-exercise implications. Even if it did, its inclusion in the
(continued)

- 2 -

could read despite vision problems; and (2) not allowing a Eucharistic Minister to enter the prison under a policy conditioning admission on possession of a current approved application, which the minister did not have. The complaint also included a chronicle of alleged religious deprivations dating back to the late 1990s when Mr. Pfeil was confined in other facilities, many out of state (per contracts with WDOC). We agree with the district court that any redress for these ancillary allegations was barred by statute of limitations and/or exhaustion principles. *See id.* at 1105 n.1, 1107. Events prior to August 2008 are barred by the four year limitations period applicable to claims under both § 1983, *see Gee v. Pacheco*, 627 F.3d 1178, 1189-90 (10th Cir. 2010), and RLUIPA, *see Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012), *cert. denied*, 134 S. Ct. 76 (2013). As for exhaustion, Mr. Pfeil specifically identified the grievances through which he insisted he had exhausted his religious exercise claims, *see* R. Vol. 1, at 25-26 (complaint), 283 (summary judgment memorandum), and these properly exhausted only the two claims noted above (and in particular did not exhaust any additional events within the limitations window after August 2008).[2]

---

analysis to follow would not alter our conclusions reached with respect to the other, clearly religious books.

[2]    In this vein, Mr. Pfeil objects that WDOC did not extend its own grievance procedures to Wyoming prisoners housed in out-of-state facilities, which he contends is required by the Western Interstate Corrections Compact (WICC), Wyo. Stat. Ann. § 7-3-401. But the only state he was confined in during the limitations period was Virginia, which is not covered by the WICC, *see id.* § 7-3-401 (Art. VII). Similarly, on the merits, Mr. Pfeil's reliance on WICC for holding WDOC Director Lampert

(continued)

Both parties moved for summary judgment. In his briefing on the motions, Mr. Pfeil voiced additional complaints about defendants' failure to accommodate his vision problems and alleged acts of retaliation (including a transfer from WHF to the Wyoming Honor Conservation Camp in October 2012) for filing this case. After defendants objected to the interjection of these new claims, Mr. Pfeil asked to supplement his pleadings to add them. The district court granted his request, deemed the pleadings amended accordingly, and gave defendants a short time to submit a brief and affidavits addressing the new claims, which they did. Nine months later, the district court granted summary judgment for defendants on all claims.

## ANALYSIS

Because Mr. Pfeil appeals from the grant of summary judgment, our review is de novo. *See Ward v. Utah*, 398 F.3d 1239, 1245 (10th Cir. 2005). But we limit our review to the issues he has raised on appeal. *See id.* In addition, a significant portion of this appeal, involving Mr. Pfeil's RLUIPA claims, has become moot. RLUIPA is limited to official capacity claims for equitable relief. *See Sossamon v. Texas*, 131 S. Ct. 1651, 1655 (2011) (holding Eleventh Amendment immunity bars RLUIPA claims for money damages); *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012) (noting RLUIPA does not permit individual capacity claims). Consequently, RLUIPA claims regarding prison conditions become moot if the inmate plaintiff is

responsible for any religious inadequacies at that out-of-state facility would be unavailing.

- 4 -

released from custody. *See Alvarez v. Hill*, 667 F.3d 1061, 1063-65 (9th Cir. 2012).

That has occurred here. Mr. Pfeil was released from WDOC custody on September 9, 2014. Accordingly, we dismiss this appeal insofar as it involves his RLUIPA claims, vacate that portion of the district court's judgment resolving those claims on the merits, and remand the claims for dismissal by the district court.[3] *See, e.g., Watkins v. Mabus*, 502 U.S. 954, 954 (1991) (effectuating *Munsingwear*[4] mootness procedure in appeal mooted only in part by intervening events).

We turn now to the claims that remain in controversy on this appeal.

## A. Exclusion of Minister for Lack of Application with Current Information

The district court's opinion sets out the factual details of this claim. *See Pfeil*, 11 F. Supp. 3d at 1111. Basically, a volunteer minister was not permitted to enter the prison to provide Catholic services on one occasion because personal information on his application was not current, as required by prison policy for admission of outside volunteers. Mr. Pfeil claimed this policy violated his rights under the Free Exercise Clause.[5] The fact that we are now concerned only with this constitutional claim has a

---

[3]     We note that the parties were afforded an opportunity to address the mootness issue through an order to show cause, to which they failed to respond.

[4]     *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950).

[5]     To the extent Mr. Pfeil complains of the incident itself, as distinct from the policy it implemented, his constitutional claim would necessarily fail because WDOC Director Lampert and Warden Pacheco did not personally participate in it. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). Of course, even if a participating official had been sued, adherence to this policy—which we hold to be constitutionally permissible—would not afford a basis for liability.

significant consequence for our analysis of Mr. Pfeil's case. As with a RLUIPA claim, he must show that the policy substantially burdened his religious beliefs. *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007). But even assuming such a burden, the policy will survive constitutional scrutiny if it is reasonably related to legitimate penological interests.[6] *See id.* at 1218-19 (following *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987), and *Turner v. Safley*, 482 U.S. 78 (1987)). Once such interests are identified, "[t]he burden then returns to the prisoner to show that these articulated concerns were irrational." *Id.* at 1218 n.2 (internal quotation marks omitted).

The district court concluded that even if the policy excluding volunteers lacking up to date information imposed a substantial burden on Mr. Pfeil's religious practice, it was justified by legitimate penological interests. In this regard, the court recognized the interests in "maintaining security, safety, and orderly operation" served by a prison policy requiring current information on the background of those permitted to enter and interact with inmates. *Pfeil*, 11 F. Supp. 3d at 1115. The court elaborated on this point while discussing the counterpart RLUIPA claim:

> The WDOC, in order to protect inmates and volunteers, and maintain security of the facility, conducts criminal background checks and maintains updated contact information for each volunteer. Volunteers are also required to complete orientation and training related to safety and security issues such as emergency response conditions, facility evacuation, and learning the primary rules and lines of authority.

---

[6] In contrast, RLUIPA requires the government to justify a substantial burden on religion by demonstrating a compelling interest served by the least restrictive means available. *Kay*, 500 F.3d at 1221 (discussing 42 U.S.C. § 2000cc-1).

Plaintiff argues there is no compelling safety and security interest in requiring ministers to complete a new application and go through the entire approval process each and every year. However, prison officials need not wait for a problem to arise before taking steps to minimize security risks. The requirement that each volunteer provide current contact information before being admitted to a WDOC facility is an appropriate proactive approach to ensuring facility safety and security and is the least restrictive means for doing so.

*Id.* at 1113 (citations and internal quotation marks omitted).

The district court went on to explain the reasonableness of the volunteer policy under the *O'Lone*/*Turner* framework in light of the rational connection between the policy and the interests supporting it, the availability of other means for inmates to exercise their religion, the adverse impact on prison operation and personnel if the policy were not enforced, and the lack of ready practical alternatives to safeguard the interests involved. *See id.* at 1115-17; *see also Kay*, 500 F.3d at 1219 (identifying such considerations as relevant in assessing the reasonableness of prison policies affecting religious practice of inmates). On appeal Mr. Pfeil has not raised any cogent objection to this thorough analysis. We affirm the district court's grant of summary judgment to defendants on this claim.

## B. Prohibition on Possession of Hardbound Books

In 2012, WDOC adopted and WHF implemented a new property-control policy prohibiting inmates from possessing hardbound books in their living quarters. The primary reasons for the new policy were that hardbound books can be used for hiding contraband or weapons and that the hard covers themselves can be used as weapons. *Pfeil*, 11 F. Supp. 3d at 1105-06. In addition, eliminating such books reduces the

time and resources the prison must expend to inspect and search property in inmates' cells. *Id.* at 1106. Finally, the policy was also adopted to meet requirements for accreditation with the American Correctional Association. *Id.* As a result of the policy, Mr. Pfeil had to relinquish two bibles and a biblical reference work, which were sent to his family for safekeeping. He claims that prohibiting his possession of these books, and not providing him with adequate replacements, violated his rights under the Free Exercise Clause.

The district court rejected this claim under the *O'Lone/Turner* framework as well. Again, it noted that important prison interests in security, safety, and orderly operation (as specified above) support the prohibition on possession of hardbound books in inmate living quarters. *Id.* at 1115. Mr. Pfeil insists these interests are exaggerated—a criticism that (when warranted) carries weight under the compelling interest standard for RLUIPA claims. *See Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1318 (10th Cir. 2010). But we do not think the criticism has force here; rather, we agree with the district court that, viewed with the deference owed the professional judgment of prison administrators on such matters, the concerns noted above are sufficient to justify the challenged policy under the legitimate interest standard for Free Exercise claims. *See Pfeil*, 11 F. Supp. 3d at 1115.

As it did with the volunteer policy, the district court went on to discuss the rational connection between the hardbound book policy and the interests it served, the availability of other means for inmates to exercise their religion (particularly their

ability to obtain softbound religious books through purchase, rebinding of hardbound books,[7] or from the prison library), the adverse impact on prison operation if the policy were not enforced, and the lack of ready practical alternatives that would safeguard the interests involved. *See id.* at 1115-17; *see also id.* at 1112-14 (discussing at length the means available to inmates to replace proscribed hardbound religious books). Mr. Pfeil takes issue in particular with the conclusion that he had alternatives to his hardbound religious books, objecting that (1) he could not afford to purchase replacements for his confiscated books and (2) even if he could afford replacements, they were not available in a font size large enough for him to read due to vision problems. The first objection is readily answered by precedent rejecting the notion that prisons must subsidize inmates' access to religious materials. Even under the stricter obligations imposed by RLUIPA, the State is "not require[d] . . . to pay for an inmate's devotional accessories." *Cutter v. Wilkinson*, 544 U.S. 709, 720 n.8 (2005). And we have specifically invoked this no subsidy principle to hold that a prison does not have to pay for softbound versions of confiscated hardbound religious texts. *See Abdulhaseeb*, 600 F.3d at 1320-21.

As for font size, Mr. Pfeil does not cite any authority holding that the constitution requires prisons to purchase religious books to accommodate the

---

[7] The prisons have machines available to convert books from hardbound to softbound. Mr. Pfeil objects that he was not offered this service for his confiscated religious books, but he has not cited any evidence showing that he specifically asked for this to be done and was denied.

physical limitations (or personal preferences) of their inmates. Indeed, such an obligation would be inconsistent with the no subsidy principle applied in *Abdulhaseeb*, which unqualifiedly held that prisons are not required to provide replacements for confiscated hardbound books at all. This aspect of Mr. Pfeil's case is more aptly considered in connection with accommodation obligations under the ADA, which is primarily how he presented it to the district court. His ADA claim is addressed in the next section of this order and judgment.

Mr. Pfeil has failed to demonstrate any error in the district court's analysis of his Free Exercise claim regarding the prohibition on possession of hardbound books. We therefore affirm the grant of summary judgment to defendants on this claim as well.

## C. ADA Claim

Mr. Pfeil claims that the failure to provide him with large print versions of his confiscated religious books violated his right to reasonable accommodation under the ADA. The district court identified two distinct dispositive deficiencies with respect to this claim: (1) it had not been exhausted in Mr. Pfeil's grievances over confiscation of his books; and (2) on the merits, he had not shown the requisite disability to trigger a duty to accommodate under the ADA. *Pfeil*, 11 F. Supp. 3d at 1119. We agree with the first point and need not reach the second.

Absent a controlling statutory or regulatory directive specifying the requisite content of prison grievances (and none have been cited to us here), an inmate

properly exhausts a claim if his grievance provides enough information regarding the nature of the alleged wrong to enable prison officials to investigate and address his complaint. *Kikumura v. Osagie*, 461 F.3d 1269, 1283-85 (10th Cir. 2006), *overruled on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), *as explained in Robbins v. Oklahoma*, 519 F.3d 1242, 1246-47 (10th Cir. 2008). The relevant materials here are the grievances (initial grievance and subsequent appeals) Mr. Pfeil submitted complaining of the confiscation of his religious books pursuant to the prohibition on hardbound books. Even judged under the fairly lenient standard clarified in *Kikumura*, Mr. Pfeil's grievances did not exhaust an ADA claim.

The only legal rights invoked in the grievances were those under RLUIPA and the Free Exercise Clause, which Mr. Pfeil alleged were violated by the confiscation of hardbound religious books that he could not afford to replace. Nowhere is there any mention of an ADA claim. But his omission went much further than just not invoking the ADA. He simply never asked for an accommodation of any vision problems, which is the essence of his present ADA claim. Indeed, he never even mentioned a disability. His only reference remotely relevant to an ADA claim was on appeal from the denial of his initial grievance when he said in passing that a softbound bible given to him by a prison chaplain did not offset the loss of his own because its print happened to be too small for him to read. He said nothing about any disabling limitation arising from a vision impairment (the macular degeneration and cataracts he now claims require accommodation made their first appearance in the

- 11 -

affidavit he filed with the complaint initiating this lawsuit).  In sum, Mr. Pfeil did not provide enough information in his grievances to enable prison officials to investigate and address the material elements of the ADA claim he later brought in this case.

## D.  Retaliation

The district court methodically addressed Mr. Pfeil's various allegations of retaliation and explained why he failed to demonstrate a triable claim.  *See Pfeil*, 11 F. Supp. 3d at 1117-18.  That discussion need not be repeated here.  We have reviewed Mr. Pfeil's arguments on appeal and conclude that no error has been shown with respect to the district court's determination.[8]

Mr. Pfeil does, however, raise a related procedural objection that should be specifically addressed.  He asserts that he did not receive the affidavits attached to defendants' summary judgment memorandum regarding his retaliation claim and contends that the district court's reliance on them was therefore impermissible.  He never raised this issue with the district court, however, so there is no determination regarding the facts of the matter for us to review, nor can we as an appellate court determine the facts for ourselves.  But even assuming the facts to be as Mr. Pfeil asserts, we reject his objection on the ground that it comes far too late in the day to serve as a proper basis for disturbing the district court's judgment.

---

[8]    Indeed, we would add that the allegations of retaliation have a further legal deficiency not noted by the district court:  the lack of personal participation by the named defendants in the actions Mr. Pfeil claims were retaliatory.

Mr. Pfeil does not dispute that he received the memorandum to which the affidavits were attached as exhibits. The memorandum was filed on June 28, 2013. The district court did not rule on summary judgment until March 31, 2014. The affidavits were explicitly cited and relied on throughout the memorandum, but Mr. Pfeil raised no objection about their alleged absence in the nine months that preceded the ruling on summary judgment. Nor, after the district court relied on the affidavits in its summary judgment order, did Mr. Pfeil raise any objection by way of post-judgment motion. The only mention of any problem in this regard was in a letter he sent to the court clerk two months after filing this appeal. His inaction thus deprived the district court of the opportunity to look into the matter and take steps to cure any omission before deciding summary judgment, and then further deprived the district court of an opportunity to address the matter in post-judgment proceedings before jurisdiction was lost through his commencement of appeal. It also deprived defendants of a timely opportunity either to dispute their alleged omission or to correct it while the matter was still under advisement in the district court. Just such considerations underlie our general rule barring consideration of arguments that an appellant has not raised in the district court. *See, e.g.*, *Cahill v. Am. Family Mut. Ins. Co.*, 610 F.3d 1235, 1239 (10th Cir. 2010); *Wall v. Astrue*, 561 F.3d 1048, 1067 & n.25 (10th Cir. 2009). Under the circumstances, we hold that Mr. Pfeil has forfeited any objection that he was not provided the affidavits attached to defendants' summary judgment memorandum on the retaliation claim.

The judgment of the district court is affirmed.  Mr. Pfeil's motion to proceed in forma pauperis on appeal is granted.  His motion for declaratory and injunctive relief for spoliation of evidence is denied.

Entered for the Court


Carolyn B. McHugh
Circuit Judge