﻿Citation Nr: AXXXXXXXX
Decision Date: 11/14/18 Archive Date: 11/14/18

DOCKET NO. 180926-423
DATE: November 14, 2018
ORDER
Service connection for tinnitus is granted.
REMANDED
Service connection for dextroscoliosis of the lumbar spine is remanded.
Service connection for a cervical spine condition to include as secondary to dextroscoliosis is remanded.
FINDING OF FACT
The evidence of record is at least in relative equipoise that tinnitus was caused by or had its onset in active duty service.
CONCLUSION OF LAW
The criteria for entitlement to service connection for tinnitus have been met. 38 U.S.C. §§ 1110, 5107(b) (2012); 38 C.F.R. 3.102, 3.303, 3.309, 3.310 (2017). 
REASONS AND BASES FOR FINDING AND CONCLUSION
On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. 
The Veteran served on active duty in the United States Air Force from July 2002 to June 2010. The Veteran initially filed claims in April 2014 and July 2014 that were adjudicated by the AOJ in November 2014. The Veteran filed a timely notice of disagreement. Prior to issuing a Statement of the Case, the Veteran selected the Supplemental Claim lane when he submitted the RAMP election form. Accordingly, a July 2018 RAMP rating decision considered the evidence of record prior to the issuance of that decision. The Veteran timely appealed the RAMP rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ). 
As a preliminary matter, the Board notes that, in his December 2014 notice of disagreement (NOD), the Veteran, through his representative, stated that claims of entitlement to service connection for a “right shoulder/arm/hand condition” and a sleep disorder had been raised by an October 2014 VA examination report. The Veteran’s representative requested that these inferred claims be further developed. To date, the AOJ has not taken action on these claims, therefore the Board does not have jurisdiction over them. However, as the NOD was filed prior to the issuance of the RAMP rating decision and prior to the March 24, 2015 requirement that all claims be submitted on the form prescribed by the Secretary, the Board refers these issues to the AOJ. 
1. Service connection for tinnitus
Service connection will be granted for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303, 3.304. Service connection generally requires evidence of (1) a current disability; (2) an in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the present disability. Walker v. Shinseki, 701 F.3d 1331 (Fed. Cir. 2013).
For chronic diseases listed in 38 C.F.R. § 3.309(a), including organic diseases of the nervous system, the nexus element of service connection may also be established by demonstrating continuity of symptoms since service. 38 C.F.R. § 3.303(b); see Walker v. Shinseki, 708 F.3d 1331 (Fed.Cir.2013). 38 C.F.R. § 3.307(a)(3) provides for presumptive service connection for chronic diseases, including organic diseases of the nervous system, that become manifest to a degree of 10 percent or more within 1 year from the date of separation from service. Tinnitus may be considered an organic disease of the nervous system for the purposes of 38 C.F.R. § 3.309(a). 
Notwithstanding the lack of evidence of disease or injury during service, service connection may still be granted if all of the evidence, including that pertinent to service, establishes that the disability was incurred in service. See 38 U.S.C. § 1113(b); 38 C.F.R. § 3.303(d).
The Veteran contends that he has a current disability of tinnitus that was caused by or incurred in service. In an October 2014 VA examination, the examiner documented that the Veteran experiences tinnitus, satisfying the first requirement of service connection. Therefore, what remains at issue is whether tinnitus was caused by or incurred in service. 
Service treatment records are silent for complaints or symptoms of tinnitus. However, in a March 2014 statement, the Veteran reported that he first began experiencing ringing in both ears approximately four years into his active duty service, in 2006. He noted that he served as a loadmaster and spent his entire career on the flight line or on a loud cargo plane. Per the Veteran, his duties made it impractical to wear hearing protection. The ringing in his ears started off intermittently, but became more regular over time, until eventually it occurred on a daily basis. The Board notes that the Veteran, as a layperson, is competent to testify to the onset of symptoms such as ringing in the ears that are observable and do not require medical expertise to identify. See Layno v. Brown, 6 Vet. App. 465, 469 (1994).
As noted above, the Veteran underwent a VA examination in October 2014. There, the examiner opined that it was less likely than not that tinnitus was caused by or incurred in service. By way of rationale, the examiner conceded that the Veteran’s military occupational specialty was likely to expose him to highly hazardous noise, but noted that the Veteran had normal bilateral hearing. The examiner did not provide further explanation as to the relevance of this finding. As noted by the Veteran’s representative in the December 2014 NOD, the examiner also incorrectly identified the onset of tinnitus as four years prior to the exam—2010—rather than four years into service—2006—as stated by the Veteran. 
The Veteran’s written testimony regarding the onset and progression of tinnitus is competent and credible and, therefore, probative. Although tinnitus is not documented in service, the Board finds that the evidence of record is at least in relative equipoise that tinnitus was caused by or had its onset in service. Accordingly, the claim must be granted. 
REASONS FOR REMAND
1. Service connection for dextroscoliosis of the lumbar spine is remanded.
The issue of entitlement to dextroscoliosis of the lumbar spine is remanded to correct a duty to assist error that occurred prior to the July 2018 rating decision on appeal. The AOJ obtained an October 2014 medical opinion, however, this medical opinion did not provide an adequate rationale regarding whether the Veteran’s dextroscoliosis had its onset in service, or is otherwise related to service. Specifically, the examiner opined that it was “likely” that thoracic scoliosis was a pre-existing condition and therefore was less likely than not caused by or incurred in service. In doing so, the examiner ignored the Veteran’s presumption of soundness upon entry and did not evaluate the condition under the correct standard. The Board notes that the Veteran underwent an examination upon enlistment to service and scoliosis was not noted at the time of that examination, therefore the Veteran is presumed sound upon entry unless clear and unmistakable evidence demonstrates that an injury or disease existed prior to service. 38 U.S.C. § 1111; 38 C.F.R. 3.304(b). Here, the examiner’s finding that it was “likely” that scoliosis pre-existed service was not a sufficient basis for the finding. 
Additionally, in the July 2018 rating decision, the AOJ described dextroscoliosis as “congenital in nature.” As the Veteran’s representative pointed out in the December 2014 NOD, VA General Counsel has stated that there is a distinction under the law between a congenital or developmental “disease” and a congenital “defect.” See VAOPGCPREC 82-90 (July 18, 1990). For VA compensation purposes, the term “disease” is broadly defined as any deviation from or interruption of the normal structure or function of any part, organ, or system of the body that is manifested by a characteristic set of symptoms and signs and whose etiology, pathology, and prognosis may be known or unknown. On the other hand, the term “defects” would be definable as structural or inherent abnormalities or conditions that are more or less stationary in nature. Id. In other words, a disease generally refers to a condition considered capable of improving or deteriorating, whereas a defect refers to a condition not considered capable of improvement or deterioration. The distinction is important as congenital diseases may be service-connected if the evidence as a whole shows aggravation in service within the meaning of VA regulations. A congenital defect, on the other hand, may not be service-connected, however, service connection may be granted for additional disability due to disease or injury superimposed upon such defect in service. Id. In referring to dextroscoliosis as “congenital,” the AOJ and any subsequent examiners should be clear in this distinction. 

2. Service connection for a cervical spine condition to include as secondary to dextroscoliosis. is remanded.
The issue of entitlement to service connection for a cervical spine condition is remanded to correct a duty to assist error that occurred prior to the July 2018 rating decision on appeal. The AOJ obtained an October 2014 medical opinion prior to the July 2018 rating decision, however, this medical opinion did not provide an adequate rationale regarding whether the Veteran’s cervical spine condition was caused or aggravated by dextroscoliosis. As the rationale was not adequate, and the issue of service connection for dextroscoliosis is being remanded, these issues are effectively intertwined. 
Specifically, the examiner explained that the Veteran’s posture was asymmetrical, with a downsloping of the left shoulder, but did not explain the medical relevance of this information as it related to the Veteran’s cervical spine condition. As the Veteran’s representative pointed out in the October 2014, the examiner also did not discuss whether this symptom could be related to dextroscoliosis and/or be a cause of the Veteran’s cervical spine condition. Furthermore, the examiner based his rationale largely in part on the fact that dextroscoliosis was not a service-connected condition, which as noted above, is a question that remains at issue.
The matters are REMANDED for the following action:
Correct the duty to assist error by scheduling the Veteran for new VA examinations of the thoracolumbar and cervical spine. The examiner should review the entire claims file, to include a copy of this Remand, and the report of examination should include discussion of the Veteran’s documented history and assertions. All indicated tests and studies should be accomplished and all clinical findings should be reported in detail. 
Regarding dextroscoliosis, the examiner should provide responses to each of the following questions: 
a) Is it clear and unmistakable (i.e. undebatable) that the Veteran’s dextroscoliosis pre-existed service? 
b) If the answer to question (a) is “yes,” is it also at clear and unmistakable (i.e. undebatable) that the pre-existing dextroscoliosis was NOT aggravated beyond its natural progression during his period of active duty service? In responding to this question, the examiner should consider not only the Veteran’s service treatment records, but also the Veteran’s lay assertions of symptom progression. If the Veteran’s dextroscoliosis constitutes a congenital defect, incapable of improvement or deterioration, this should be made clear.
c) If the answer to question either question (a) or (b) is “no,” assume as true that the Veteran entered service in sound condition. With this assumption in mind, is it at least as likely as not (50 percent or greater probability) that dextroscoliosis had its onset in, or is otherwise related to the Veteran’s period of active service? 
Regarding the Veteran’s cervical spine condition, the examiner should render an opinion as to whether it is at least as likely as not (50 percent or greater probability) that the disability had onset in, or is otherwise related to his period of active duty service; or whether it was caused or aggravated beyond its natural progression by dextroscoliosis. 
The examiner should set forth all examination findings, along with complete rationale for the conclusions reached, in a printed report.

 
V. Chiappetta
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD M. Giaquinto, Associate Counsel